IN RE the TERMINATION OF PARENTAL RIGHTS TO CHEZRON M., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

JAMES P., Respondent-Appellant.†

Court of Appeals

*No. 04–0723. Submitted on briefs March 30, 2004.—Decided May 11, 2004.*

## 2004 WI App 124

(Also reported in 684 N.W.2d 164.)

† Petition to review granted 10-5-04.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Carl W. Chesshir*, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *E. Michael McCann*, district attorney and *Thomas C. Binger*, assistant district attorney, Milwaukee.

On behalf of the minor child, there was a brief filed by *Shelia Hill-Roberts*, guardian ad litem, *Legal Aid Society of Milwaukee, Inc.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. James P. appeals from an order

terminating his parental rights to Chezron M., a girl born in 1995. The trial court determined in a bench trial that James P. had abandoned Chezron by having no contact with her between April 25, 2000, and December 25, 2000, and between April 25, 2001, and December 25, 2001, and that there were thus grounds under Wis. Stat. § 48.415(1)(a)3 to terminate his parental rights to her. James P. did not dispute before the trial court, and does not dispute on this appeal, that he had no contact with Chezron during those periods. Nor does he assert that he had "good cause" under § 48.415(1)(c) for not having the requisite contact. Rather, he contends that the statute did not apply to him because he was not adjudicated as Chezron's "parent" until 2002. We disagree.

¶ 2. This case is governed by two provisions of the Children's Code, Wis. Stat. §§ 48.02(13) and 48.415(1)(a)3. For the purposes of this appeal, there are no contested facts. Application of a statute to uncontested facts is a legal issue subject to our *de novo* review. *Randy A.J. v. Norma I.J.*, 2004 WI 41, ¶ 12, 270 Wis. 2d 384, 393, 677 N.W.2d 630, 635.

¶ 3. Wisconsin Stat. § 48.415(1)(a)3 provides that among the grounds "for the termination of parental rights" is that "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer." James P. contends that although, as found by the trial court in its extensive and well-reasoned written decision, "[i]n early 2002, as a result of DNA testing, James P. was adjudicated the father of Chezron," he was not Chezron's "parent" as that term is used in § 48.415(1)(a)3 when he "failed to visit or

communicate with" her. Thus, as noted, he argues that § 48.415(1)(a)3 does not apply.

¶ 4. As material here, WIS. STAT. § 48.02(13) defines "parent" for the purposes of WIS. STAT. ch. 48 as:

> either a biological parent, a husband who has consented to the artificial insemination of his wife under s. 891.40, or a parent by adoption. If the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under s. 767.60, "parent" includes a person acknowledged under s. 767.62 (1) or a substantially similar law of another state or adjudicated to be the biological father.

Thus, a "parent" is either:

- "a biological parent" or

- "a husband who has consented to the artificial insemination of his wife" or

- "a parent by adoption" or

- "a person acknowledged under s. 767.62 (1) or a substantially similar law of another state" "[i]f the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under s. 767.60" or

- a person "adjudicated to be the biological father" "[i]f the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under s. 767.60."

As the trial court noted with clarity of insight:

> The simplest answer is perhaps the most accurate answer here: a man adjudicated as the biological father *has always been* the biological father and, there-

> fore, that man has always been a "parent" under § 48.02(13). As such, it is of no import that James P. was unadjudicated during the abandonment period — the statute still applies and the State can terminate his rights under § 48.415(1)(a)3.

(Emphasis by the trial court.) We agree that the fact of biological parenthood does not turn on whether it is recognized, found, or adjudicated, any more than the fact that a tree has fallen in the forest depends on someone's perception of the crashing sound, or, in another context, gravity's existence depended on Sir Isaac Newton's formulation of its principles.

¶ 5. No one suggests that any of the middle three bulleted definitions apply. Although the parties discuss the application *vel non* of the fifth bulleted definition, we need not in this case decide whether an adjudication subsequent to acts that comprise grounds for the termination of a person's parental rights subjects the adjudicated person to the termination of parental rights based on those acts because the first bulleted definition *does* apply and, as the trial court recognized, James P. was *always* Chezron's biological father, even before he was formally adjudicated as such.

¶ 6. We must, absent a constitutional infirmity, apply statutes as they are written, discerning legislative intent from a statute's language. *Wisconsin Citizens Concerned for Cranes and Doves v. Wisconsin Dep't of Natural Res.*, 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 329, 677 N.W.2d 612, 617. When that language is not ambiguous, we apply it as it stands unless that would lead to an "absurd result." *Ibid.* Although the law can terminate a parent-child relationship, and it can also foster a psychological parent-child relationship, only a power much much higher than law, lawyers, judges, states or nations

can, as the State points out, *create* biological parenthood. That the fifth bulleted definition (that is, that a person who is "adjudicated to be the biological father" of "a nonmarital child . . . whose parents do not subsequently intermarry") may be within the first bulleted definition ("biological parent") does not narrow the broad scope of that first bulleted definition, which is not, *in haec verba,* limited to children of a solemnized marriage. *See Wisconsin Citizens Concerned for Cranes and Doves,* 2004 WI 40, ¶¶ 19–24, 270 Wis. 2d at 338–342, 677 N.W.2d at 622–624 (mourning doves are "game," defined as "wild . . . birds," even though they are not "game birds" and are within the category of "nongame species"); *cf. F.M. Mgmt. Co. Ltd. P'ship v. Wisconsin Dep't of Revenue,* 2004 WI App 19, ¶ 12, 269 Wis. 2d 526, 537–538, 674 N.W.2d 922, 928 (legislature presumed to use words according to their ordinary, common-sense meaning). Although James P. interposes law-school-question-type analyses in an attempt to eschew legal responsibility for the periods during which he had no contact with Chezron, he was in fact Chezron's biological parent when she was born and he has never denied that. We affirm.

*By the Court.*—Order affirmed.