# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2020AP1681

Complete Title of Case:

> **TOWN OF MENTOR,**
>
> **APPELLANT,**
>
> **V.**
>
> **STATE OF WISCONSIN,**
>
> **PETITIONER-RESPONDENT,**
>
> **CHARLES MONTGOMERY,**
>
> **RESPONDENT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | November 11, 2021 |
| Submitted on Briefs: | May 12, 2021 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Kloppenburg, and Graham, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the appellant, the cause was submitted on the briefs of *Anders B. Helquist* of *Weld Riley, S.C.*, Eau Claire. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Gabe Johnson-Karp*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |
| | On behalf of the respondent-respondent, the cause was submitted on the brief of *Jefren E. Olsen*, assistant state public defender of Madison. |

## COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 11, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP1681**

**STATE OF WISCONSIN**

Cir. Ct. No.  2001CI1

**IN COURT OF APPEALS**

TOWN OF MENTOR,

    APPELLANT,

  V.

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

CHARLES MONTGOMERY,

    RESPONDENT-RESPONDENT.

        APPEAL from an order of the circuit court for Wood County: ROBERT J. SHANNON, Judge. *Affirmed.*

        Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

¶1 BLANCHARD, P.J. This chapter 980 commitment case began in 2001 with the filing of a petition in the circuit court requesting that Charles Montgomery be committed as a sexually violent person. *See* WIS. STAT. ch. 980 (2019-20).[1] The court ordered Montgomery civilly committed to a secure mental health facility. In June 2020, after Montgomery and the State reached a stipulation that he met the criteria for supervised release, the court issued an order under which Montgomery's residential placement would be in the Town of Mentor, in Clark County. The court based this decision on a placement report compiled by a temporary county-created committee that identified the residence as suitable for Montgomery's placement and a supervised release plan written by the Wisconsin Department of Health Services. The Town filed a motion requesting that the court allow it to intervene in this case as a matter of right. The court denied the motion and the Town appeals.

¶2 The Town argues that it is entitled to intervene to advance the position that, under pertinent provisions of chapter 980, Montgomery's proposed placement in the Town is improper. We conclude that, when the Town's intervention interest is properly understood, the Town fails to meet at least one of the four required elements to establish entitlement to intervention as a matter of right under WIS. STAT. § 803.09(1). Specifically, the Town fails to show that Montgomery's placement in the Town may as a practical matter impair its ability to protect its only asserted interest in this case.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3 The Town also argues that Montgomery does not meet the qualifications for supervised release and that this supports the Town's motion for intervention. We conclude that the Town forfeited this argument for intervention because it failed to raise it in the circuit court and we decline to disregard forfeiture under the circumstances of this case. Accordingly, we affirm.

## BACKGROUND

¶4 Montgomery was convicted in 1994 of two counts of second degree sexual assault of a child. The State petitioned in 2001 for an order committing Montgomery as a sexually violent person. *See* WIS. STAT. § 980.01(6)(a), (7); WIS. STAT. § 980.02(2). At a trial in 2002, a jury found that Montgomery was a sexually violent person and the circuit court issued a judgment and order committing him for treatment in a secure mental health facility. *See* WIS. STAT. §§ 980.05-.06.

¶5 Pursuant to WIS. STAT. § 980.07(1), Montgomery was subject to psychological examinations at least once every 12 months to determine if he qualified either for full discharge from his commitment or for placement on supervised release. *See also* WIS. STAT. §§ 980.08(4)(cg), 980.09(3). Consistently, from 2003 to early 2019, Montgomery's psychological examiners concluded that he had not met the statutory criteria for supervised release, specifically because he had not made "significant progress in treatment." *See* § 980.08(4)(cg)1.[2] However, beginning in 2013, these same examination reports

---

[2] WISCONSIN STAT. § 980.04(4)(cg) provides:

(continued)

began reflecting the conclusion that Montgomery's risk of committing another sexually violent act was no longer "more likely than not" and in that way tended to support the conclusion that Montgomery was appropriate for outright discharge from his commitment. *See State v. Stephenson*, 2019 WI App 63, ¶12, 389 Wis. 2d 322, 935 N.W.2d 842, *aff'd*, 2020 WI 92, ¶2, 394 Wis. 2d 703, 951 N.W.2d 819 (to prevail against a discharge petition, the State must prove by clear and convincing evidence that the committed person still meets the criteria for commitment, including that the person is dangerous to others because of a mental disorder that makes it more likely than not that the person would engage in one or more future acts of sexual violence).

---

The court may not authorize supervised release unless, based on all of the reports, trial records, and evidence presented, the court finds that all of the following criteria are met:

1. The person is making significant progress in treatment and the person's progress can be sustained while on supervised release.

2. It is substantially probable that the person will not engage in an act of sexual violence while on supervised release.

3. Treatment that meets the person's needs and a qualified provider of the treatment are reasonably available.

4. The person can be reasonably expected to comply with his or her treatment requirements and with all of his or her conditions or rules of supervised release that are imposed by the court or by the department.

5. A reasonable level of resources can provide for the level of residential placement, supervision, and ongoing treatment needs that are required for the safe management of the person while on supervised release.

¶6 At several points between 2009 and 2013, Montgomery petitioned for discharge and the circuit court denied each petition. *See* WIS. STAT. § 980.09. In 2018, represented by counsel, Montgomery filed the petition for discharge that eventually led to the Town's motion to intervene as a matter of right and this appeal. While Montgomery's petition was still pending, the next two regularly scheduled psychological examinations occurred. A March 2019 examination report concluded that Montgomery met all the criteria needed for supervised release except one. The exception was that, despite Montgomery's "improved treatment participation," he was "not yet demonstrating significant progress in treatment." An October 2019 examination report by the same examiner determined for the first time that he met all of the criteria for supervised release.

¶7 The State and Montgomery reached a stipulation under which Montgomery withdrew his pending petition for discharge, Montgomery agreed to pursue supervised release under WIS. STAT. § 980.08, and the State agreed that it would not object to that request. The parties stipulated that Montgomery "can meet his burden of proof" to merit supervised release.

¶8 In November 2019, the circuit court issued an order that acknowledged the parties' stipulation and determined that Montgomery had proven his qualification for supervised release by clear and convincing evidence. Based on this determination and pursuant to WIS. STAT. § 980.08(4), the court in the same order directed the following. First, Montgomery's statutorily determined "county of residence," Clark County, was to prepare a placement report, relying

on a temporary committee composed of county and state officials.[3]  *See* WIS. STAT. § 980.08(4)(dm)1. (establishing membership and function of temporary committee to determine residential option for county-resident supervisee).  The committee's placement report would identify "an appropriate option for community placement" (*i.e.*, a place for him to reside while under supervision) that would address considerations under § 980.08(4)(dm) that included the potential for proximity to such areas as public parks or schools.  Second, after receiving the placement report, the Wisconsin Department of Health Services was to prepare a supervised release plan pursuant to § 980.08(4)(f).[4]

¶9     After the circuit court issued these directives, but before the committee submitted its placement report, a February 2020 examination report was generated based on a regularly scheduled psychological examination.  It concluded that Montgomery was not eligible for supervised release because he was "not yet making significant progress in treatment."  However, the report indicated that the examiner was aware of the court's supervised release decision and did not "disagree with that ruling."  The examiner further concluded that it was "substantially probabl[e] that Mr. Montgomery will not engage in an act of sexual violence while on supervised release."

---

[3] Pursuant to statutory standards, the state department of health services determined that Montgomery's "county of residence" was Clark County.  *See* WIS. STAT. §§ 980.01(1h), 980.105. The Town does not challenge this particular determination.

All references to "the county" and "the committee" in this opinion are to Clark County and the temporary placement committee of county and state officials that the county created pursuant to court order and WIS. STAT. § 908.08(4)(dm).

[4] From this point forward we will refer to the Wisconsin Department of Health Services, as opposed to any county-level department, as "the department."  *See* WIS. STAT. §§ 980.01(1h), 980.08(4)(dm).

¶10     Pursuant to the circuit court's November 2019 order and WIS. STAT. § 980.08(4)(dm)1., Clark County formed the required temporary placement committee.  In a placement report, the committee identified a residence in the Town that it determined was appropriate under the requirements in § 980.08.  The placement report indicated that the committee had consulted with the Clark County Sheriff's Department, satisfying its obligation under § 980.08(4)(dm)2. to "consult with a local law enforcement agency having jurisdiction over the residential option."   After receiving the placement report, the department submitted to the circuit court a supervised release plan for this same proposed residential placement.

¶11     In June 2020, the circuit court approved the department's plan and entered an order for supervised release.  *See* WIS. STAT. § 980.08(4)(g).  The court stayed the order for 60 days to give the department time to prepare the residence for placement and to issue required notices.

¶12     The Town moved for intervention as a matter of right in July 2020. *See* WIS. STAT. § 803.09(1).[5]  In August 2020, after the expiration of the circuit court's stay, the court held a hearing on the Town's motion, heard objections from Montgomery and the State, and denied the motion.  In making its ruling the court

---

[5] The Town did not move for permissive intervention under WIS. STAT. § 803.09(2), which permits circuit courts to allow intervention when "[u]pon timely motion … a movant's claim or defense and the main action have a question of law or fact in common." *See City of Madison v. WERC*, 2000 WI 39, ¶11 n.11, 234 Wis. 2d 550, 610 N.W.2d 94 ("While intervention as a matter of right requires a person to be necessary to the adjudication of the action, permissive intervention requires a person to be merely a proper party.").

noted, with agreement by the parties, that Montgomery had in fact been released and placed under supervision at the residence in the Town.[6]

¶13   The Town appeals.  The State and Montgomery have each filed a respondent's brief in this appeal.

## DISCUSSION

¶14   The Town contends that the circuit court erred in denying its motion to intervene as a matter of right.  Our supreme court has explained that a movant for intervention as a matter of right "must satisfy" each of the following elements: (1) the motion is timely; (2) "the movant claims an interest sufficiently related to the subject of the action"; (3) "disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest"; and (4) "the existing parties do not adequately represent the movant's interest." *Helgeland v. Wisconsin Muns.*, 2008 WI 9, ¶¶38-39, 307 Wis. 2d 1, 745 N.W.2d 1 (footnotes omitted); *see also* WIS. STAT. § 803.09(1).

¶15   The Town contends that it meets each requirement because its motion to intervene:  (1) was timely filed; (2) identifies the Town's interest as being the protection of the public in the Town; (3) alleges that the proposed placement option for Montgomery approved by the circuit court fails to comply with WIS. STAT. § 980.08 in several ways and that denying the Town the ability to intervene and raise alleged non-compliance with § 980.08 provisions impairs the Town's ability to protect its identified interest; and (4) alleges that the State has

---

[6] We observe that neither the State nor Montgomery argues that this appeal is moot and we do not address potential mootness.

not adequately represented the Town's identified interest because the State allowed violations of the requirements established in § 980.08.

¶16    Montgomery argues that the Town fails to meet any of the four required elements for intervention under WIS. STAT. § 803.09(1) as set forth in *Helgeland*.  He contends that the Town's stated interest in public protection in the Town lacks a statutory basis and is too general in nature.  Montgomery further contends that the Town forfeited, by failing to raise in the circuit court, any argument for intervention based on the position that Montgomery does not qualify for supervised release.  The State argues that, when the Town's interest in this case is properly understood as being limited to the correct application of all pertinent provisions in WIS. STAT. ch. 980, the Town fails to show either that this limited interest in intervening would be impaired by the disposition of those proceedings or that the State has inadequately represented the Town's limited interest.

¶17    We conclude that the Town fails to show that its intervention interest, as properly understood, would be practically impaired by Montgomery's placement.  We further conclude that the Town forfeited any argument that it is entitled to intervene as a matter of right so that it can argue to the circuit court that Montgomery does not qualify for supervised release and we decline to disregard forfeiture under the circumstances here.  Before explaining our conclusions further and addressing the Town's arguments, we provide the standard of review in addition to other legal standards bearing on intervention as a matter of right under WIS. STAT. § 803.09(1).

## I.  Legal Standards

¶18    Aside from a circuit court's determination about the timeliness of a motion to intervene, we review de novo whether a party has met the required

9

elements for intervention under WIS. STAT. § 803.09(1). *See Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 470, 516 N.W.2d 357 (1994); *Helgeland*, 307 Wis. 2d 1, ¶41.[7] Statutory interpretation presents issues of law that we review independently. *See State v. McGee*, 2017 WI App 39, ¶11, 376 Wis. 2d 413, 899 N.W.2d 396.

¶19 Turning to intervention under WIS. STAT. § 803.09(1), there is "'no precise formula for determining whether a potential intervenor meets the requirements'" of the statute. *Helgeland*, 307 Wis. 2d 1, ¶40 (quoted source omitted). Our supreme court has explained that the intervention statute

> "attempts to strike a balance between two conflicting public policies." On the one hand, "[t]he original parties to a lawsuit should be allowed to conduct and conclude their own lawsuit...." On the other hand, "persons should be allowed to join a lawsuit in the interest of the speedy and economical resolution of controversies."

*Id.* (footnotes and quoted sources omitted).

---

[7] Montgomery argued in the circuit court that the Town's motion was untimely, noting that the court's June 5, 2020 order approved the department's supervised release plan and that the court's stay had expired by the time of the circuit court hearing addressing the Town's intervention motion. We do not address whether the Town's motion was timely because the circuit court did not make any clear determination on this issue and timeliness in this context is a determination for the circuit court to make in its discretion. *See Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 471, 516 N.W.2d 357 (1994) ("The question of timeliness is left to the discretion of the circuit court.").

Separately, while our review of each requirement aside from timeliness is de novo, the analysis can depend on factual findings made by the circuit court that we will not disturb unless the findings are clearly erroneous. *See Helgeland v. Wisconsin Muns.*, 2008 WI 9, ¶41, 307 Wis. 2d 1, 745 N.W.2d 1; *Armada Broad., Inc.*, 183 Wis. 2d at 471. On a related note, our analysis is generally to be "holistic, flexible, and highly fact-specific." *Helgeland*, 307 Wis. 2d 1, ¶40 (footnote omitted). However, we do not discern that the circuit court here made factual findings that are significant to our analysis and the parties do not dispute any material issues of fact.

¶20 As noted, the movant must meet each of the four requirements for intervention. Nevertheless, the requirements "need not be analyzed in isolation from one another, and a movant's strong showing with respect to one requirement may contribute to the movant's ability to meet other requirements as well." *Id.*, ¶39. Thus, while we discuss some of the requirements here separately, "there is interplay between [them]; the requirements must be blended and balanced to determine" whether the Town has a right to intervene. *See id.* We provide additional standards regarding the individual elements of a motion to intervene as a matter of right as needed below.

## II. Analysis

¶21 We now preview two subsections of analysis. We first address the Town's argument for intervention as a matter of right under WIS. STAT. § 803.09(1) on the ground that the Town is entitled to argue to the circuit court that Montgomery's placement at the proposed residence within the Town's boundaries does not comply with WIS. STAT. § 980.08(4)(dm). We explain why, as properly understood, the nature and extent of the Town's "sufficiently related" interest in the circuit court's resolution of Montgomery's supervised release proceedings relate exclusively to ensuring that the court complies with the requirements governing the supervised release process in § 980.08(4). Based on that understanding of the Town's only "sufficiently related" interest, the Town's argument fails for the following reason: The Town does not show that its ability to protect its only properly understood interest is impaired as a practical matter by Montgomery's residential placement in the Town under § 980.08(4)(dm).

¶22 We next address why we conclude that the Town forfeited a separate argument for intervention by failing to raise it in the circuit court and that the

11

circumstances here do not call for us to disregard forfeiture. Specifically, we reject based on forfeiture the Town's argument that it should be allowed to intervene in order to argue to the circuit court that Montgomery does not qualify for supervised release under WIS. STAT. § 980.08(4)(cg) based on the conclusions of the February 2020 examination report. We also explain briefly that we would affirm on the merits of this forfeited issue if we were to reach it.

*Town's Claimed Interest That Is Sufficiently Related To The Action*

¶23     In order to properly analyze the Town's preserved argument for intervention, we begin by identifying the extent to which the Town claims an interest that is "sufficiently related to the subject matter of the action." *See Helgeland*, 307 Wis. 2d 1, ¶38.

¶24     As with the intervention analysis as a whole, the "sufficiently related" interest element must be addressed in a practical rather than a technical manner, and in a way that is both flexible and fact-specific. *See id.*, ¶¶43-44. The focus of this requirement is on the movant's "'stated interest in intervention'" as viewed in light of the competing policies that are being balanced by WIS. STAT. § 803.09(1), as noted above. *See Helgeland*, 307 Wis. 2d 1, ¶44 (quoted source omitted). Our supreme court has further explained regarding sufficiently related interests:

> [A] claimed interest does not support intervention if it is only remotely related to the subject of the action. There must be some sense in which the interest is "of such direct and immediate character that the intervenor will either gain or lose by the direct operation of the judgment." A movant may intervene as of right when the movant needs "to protect a right that would not otherwise be protected in the litigation."

*Id.*, ¶45 (footnotes and quoted sources omitted).

12

¶25     To repeat, the Town identifies its claimed interest for purposes of intervention as the protection of the public in the Town. The Town's arguments regarding how its claimed interest is sufficiently related to the circuit court's decision regarding Montgomery's potential supervised release essentially fall into two, related categories. First, the Town notes that this safety interest is consistent with one of the policy goals of chapter 980 generally, and with supervised release under WIS. STAT. § 980.08 specifically, and argues that it is therefore entitled to pursue its interest in ensuring that the requirements of § 980.08 are met in this case. *See State v. Rachel*, 2010 WI App 60, ¶18, 324 Wis. 2d 465, 782 N.W.2d 443 ("'the principal purposes of … ch. 980 are the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future'" (quoting *State v. Carpenter*, 197 Wis. 2d 252, 271, 541 N.W.2d 105 (1995))). Second, the Town argues that its stated interest in protecting the public in the Town is implicated by the prospect that a person who has been committed following acts of sexual violence against minors, and who at least in this case presents some risk of relapsing into sexually violent behavior, may be placed under supervised release in a Town residence.

¶26     However, as the State and Montgomery note, allowing a municipality to take a generalized position against the placement of a WIS. STAT. ch. 980 supervisee anywhere within its boundaries based on a broad interest in protecting the safety of persons within those boundaries runs contrary to the current scheme of WIS. STAT. § 980.08. That scheme provides a detailed procedure for the consideration and identification of potential placement residences for supervisees and specifically requires that each supervisee be placed somewhere in his or her county of residence. *See* § 980.08(dm)-(g). Further,

13

allowing intervention based on such a generalized interest would justify every municipality in the supervisee's county of residence being allowed to intervene to offer the circuit court reasons why his or her residential placement within *their* boundaries would risk the safety of all persons within *their* boundaries. That result would upset the balance of policies that WIS. STAT. § 803.09(1) attempts to strike. Put another way, any advocacy by the Town against placing Montgomery in the Town *other than* by merely insisting on compliance with pertinent provisions of § 980.08 would not be advocacy for a result that can be "'gain[ed] or lo[st]'" and is not a "'right'" of the Town that can "'be protected in the litigation.'" *See* ***Helgeland***, 307 Wis. 2d 1, ¶45 (quoted source omitted).[8]

¶27 At times, the Town appears to take the categorical position that, contrary to any narrowing of its interest, our decision in ***McGee*** establishes that, under all circumstances, a municipality must be allowed to intervene when a person committed under WIS. STAT. ch. 980 is placed in that municipality. *See* ***McGee***, 376 Wis. 2d 413, ¶¶3 & n.1, 22 (concluding that the county and town of placement could intervene in proceedings under § 980.08 (2015-16)). Under this view, ***McGee*** stands for the proposition that any arguable failure to follow "the mandatory supervised release criteria and procedures in Chapter 980" would only add to an already sufficient, virtually automatic case for municipal intervention.

---

[8] We consider it significant that WIS. STAT. § 980.135 prohibits municipalities from, in pertinent part, "enforc[ing] an ordinance or resolution that restricts or prohibits a sex offender from residing at a certain location … so long as" the supervisee is released under WIS. STAT. § 980.08 and "is in compliance with all court orders issued under this chapter." This reflects a legislative intent to limit municipal involvement in chapter 980 placements of supervisees to situations in which there is an issue recognizable under the specific procedures and standards of chapter 980, even though § 980.135 does not specifically refer to the concept of intervention.

However, in light of statutory changes made by the legislature in the wake of *McGee*, that case does not stand for either of these two propositions.

¶28   *McGee* was decided when the WIS. STAT. ch. 980 framework was different.  It is true that the court in *McGee* acknowledged that the town and the county seeking intervention there each had a "'substantial interest in the well-being of the residents and property located within its boundaries.'"  *See McGee*, 376 Wis. 2d 413, ¶24 (quoted source omitted).  Yet we recognized that other, narrower interests of the town and the county in that case further supported intervention, as recognized in WIS. STAT. § 980.08(4) (2015-16).  Under the then-current version of § 980.08(4), the circuit court was required to "authorize … any local governmental unit in the county of intended placement"—which under some circumstances could be distinct from the county of residence—"to submit prospective" residences for supervised placement to the court.  *See* § 980.08(4)(cm)-(d) (2015-16); *McGee*, 376 Wis. 2d 413, ¶¶6, 13.  Given this framework, the county and municipality of placement in *McGee* each had not only an interest in "having a meaningful opportunity to be involved in McGee's placement process," but further each was "statutorily entitled to be heard" on the issue of placement within its boundaries.  *McGee*, 376 Wis. 2d 413, ¶24.  The current version of § 908.08 retains a requirement that the municipality of placement must be notified before the placement occurs, although not before supervised release is ordered or a county placement report submitted.  *See* § 980.08(6m).  However, the current version no longer provides for participation by the municipality in the process of determining a placement residence.  *See* § 980.08(4)(dm).  In sum, under current ch. 980 law, unlike the law at the time of *McGee*, the Town's role here as a potential intervenor would not be as a statutorily mandated participant, but instead as an interested party seeking to make arguments

15

about whether the existing parties had taken sufficient steps to see that the statutory process has been complied with.

¶29    At the same time, however, we now briefly explain that we do not apply a possible categorical argument by Montgomery, which would preclude intervention by municipalities in WIS. STAT. § 980.08 proceedings based on the legislative changes made after *McGee*.  Montgomery appears at times to take the position that changes to WIS. STAT. ch. 980 after *McGee* are meant to automatically disallow municipalities from being able to show a sufficiently related interest for intervention in the supervised release process.  As part of this argument, Montgomery may mean to suggest that the Town must identify an interest in the proceedings based on an explicit reference in § 980.08 giving municipalities such as the Town an active role in the supervised release process.

¶30    If Montgomery aims for this categorical rule, we reject it.  As the Town notes, one general rule is that a potential intervenor as of right "need not demonstrate that it has a judicially enforceable right to challenge" the decision at issue.  *See Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 745, 601 N.W.2d 301 (Ct. App. 1999).  Further, as noted above, *Helgeland* calls for a non-technical, pragmatic analysis, one that tends to avoid the application of categorical rules. *See Helgeland*, 307 Wis. 2d 1, ¶43.  For these reasons, we do not determine that a municipality in the position of the Town here could under no circumstances be entitled to intervention as a matter of right, at least when the motion to intervene is based on the purported identification of a genuine dispute as to whether WIS. STAT. § 980.08 procedure had been properly followed.  As the Town notes, courts weighing intervention-as-of-right motions in this context should be mindful of the observation in *McGee* that "[s]afety is a paramount consideration in the placement

16

of sexually violent persons … and, therefore, compliance with the statutory provisions is critical." *See* **McGee**, 376 Wis. 2d 413, ¶11.

¶31    We now return to the specific interest that the Town here asserts as its basis for intervention as a matter of right.  At times, the Town appears to rely on *McGee* to support a broad right of intervention in this context.  At other times, it appears to retreat from that position.  In any case, by the time of its reply brief, the Town clarifies that its claimed interest, while connected to the broader theme of public safety in the Town, is limited to "ensuring Chapter 980's placement procedures are followed when a [WIS. STAT. § 980.08 supervisee] is placed in the Town on supervised release."  That is, the Town acknowledges that it seeks to intervene for the purpose of arguing to the circuit court why Montgomery should not be placed at the proposed residence in the Town under the framework of § 980.08.

¶32    To that end, the Town heavily rests its arguments for intervention on the premise that procedural requirements of WIS. STAT. § 980.08 were violated here, in particular and as discussed below that the committee failed to comply with the § 980.08(4)(dm) placement procedures in multiple ways.  From this premise, the Town argues that these purported placement-procedures violations show (1) that the Town's interest in compliance has not been adequately represented and (2) that the Town's ability to protect its interest is impaired by Montgomery's resulting placement in the Town.  Based on these purported compliance failures, the Town contends that the circuit court should not have approved either the

committee's placement report identifying the placement residence in the Town or the department's release plan keyed to that identified residence.[9]

¶33 Having identified the extent of the Town's claimed interest that is sufficiently related to Montgomery's placement proceedings, we next determine whether the Town's claim for intervention meets the intervention element related to the potential impairment of its ability to protect that claimed interest.[10]

### Impairment Of Ability To Protect Claimed Interest

¶34 As noted above, the Town contends that alleged violations of statutory procedures by the committee in reaching its placement recommendation supports the Town's motion for intervention based on its interest in ensuring compliance with WIS. STAT. § 980.08 procedure. The Town seeks intervention in order to show the circuit court that there were two violations of the procedural requirements in para. (4)(dm). First, the Town contends that the placement of Montgomery's residence within 1,500 feet of an All-Terrain Vehicle (ATV) route violates § 980.08(4)(dm)1.a., which requires that the committee ensure that Montgomery be placed "not less than 1,500 feet from any school premises, child

---

[9] Given the Town's exclusive focus on committee compliance with WIS. STAT. § 980.08(4)(dm), we do not determine whether there could have been other bases for the Town to support intervention as a matter of right within the framework of § 980.08.

[10] Because we resolve the Town's argument for intervention based on WIS. STAT. § 980.08(4)(dm) on the ground that the impaired-ability element for intervention as of right is not met, we do not address the State's argument that the Town's interest in compliance with § 980.08(4)(dm) was adequately represented by an existing party. *See **Helgeland***, 307 Wis. 2d 1, ¶39 (all four elements must be shown). Similarly, in briefly addressing the merits of the Town's forfeited argument based on § 980.08(4)(cg), we address only the Town's failure to establish that the State did not adequately represent the Town's interests at the stage of proceedings when the circuit court determined whether Montgomery qualified for supervised release.

care facility, public park, place of worship, or youth center." Second, the Town contends that the committee failed to "consult with a local law enforcement agency having jurisdiction over the residential option" as required by § 980.08(4)(dm)2. in preparing the placement report. We conclude that, when the Town's interest is properly framed as ensuring compliance with the procedures set forth in WIS. STAT. ch. 980, the Town fails to establish that its ability to protect that interest would be practically impaired by the disposition of the action. The fatal defect in the Town's argument is that it fails to establish any violation of the § 980.08(4)(dm) procedural requirements.

¶35 The Town emphasizes that our review of the denial of its intervention motion does not call on us to resolve the merits of its arguments that the circuit court should not have ordered Montgomery to be placed at the proposed residence. It is true that we do not resolve the merits of the court's placement decision. *See* *Helgeland*, 307 Wis. 2d 1, ¶9 (noting that the court would not address the constitutional merits issue underlying the motion for intervention). However, the Town's preserved argument for reversal of the circuit court's intervention decision rests heavily on the premise that the committee did not comply with WIS. STAT. § 980.08, and the Town bears the burden of showing that the disposition of Montgomery's supervised release and placement would impair the Town's ability to protect its interest in ensuring statutory compliance. *See* *Helgeland*, 307 Wis. 2d 1, ¶38. Further, the Town's arguments regarding the committee's alleged noncompliance all depend on uncontested facts about the proposed placement residence as they relate to the pertinent provisions of § 980.08. *See* *State v. James P.*, 2004 WI App 124, ¶2, 274 Wis. 2d 494, 684 N.W.2d 164 ("Application of a statute to uncontested facts is a legal issue."). Under these circumstances, if the uncontested facts show that the committee

19

actually complied with the provisions as a matter of law, then it follows that Montgomery's placement in the Town could not leave the Town's interest unprotected in the manner that it argues occurred.

¶36    In assessing the Town's arguments for intervention based on aspects of the placement process, we assume without deciding that the State, which in the words of WIS. STAT. § 803.09(1) is an "existing part[y]" in this action, was not charged by law with ensuring that the county, through the committee that it created, complied with its obligations under WIS. STAT. § 980.08(4)(dm) and that the State's interest in the county's compliance was not "identical" to the Town's. Based on these assumptions, the Town does not need to rebut a presumption of adequate representation, noted in *Helgeland*, as to those placement procedures. *See Helgeland*, 307 Wis. 2d 1, ¶¶89-91.  This is because the only entity arguably charged with ensuring compliance with para. (4)(dm) placement procedures, the county through its committee, is not an existing party.  Even with these assumptions in favor of the Town, we conclude that the Town fails to show that the committee did not fulfill its duties and we conclude further that this amounts to a failure to show that the Town's interest in ensuring compliance with the requirements of para. (4)(dm) was impaired by the circuit court's decisions regarding Montgomery's placement.

¶37    The following is additional background.  The placement report states that the committee "consulted with the Clark County Sheriff's Office and requested an investigation of the [placement residence] and surrounding area to determine whether the property meets statutory criteria for the placement of a serious child sex offender under [WIS. STAT. §] 980.08(4)(dm)1.a.-c."  The placement report further includes a brief assessment written by a Clark County sheriff's deputy following the deputy's on-site survey of the placement residence.

20

This assessment states that "[t]here were no residences within 1500 feet" of the placement residence. The deputy notes that during a visit to the residence he observed "children riding on a four-wheeler" at a residence more than 1,500 feet away from the placement residence. The placement report also states that the committee consulted with "Clark County Planning and Zoning" to obtain an overhead map of the placement residence and its surroundings, which indicates that the residence is not within 1,500 feet of the types of areas noted in § 980.08(4)(dm)1. such as schools or elder care facilities.

¶38 Continuing with additional background, the Town brought to the circuit court's attention that there is an ATV route that is an overlay on the road where the deputy had observed children riding on an ATV, and that this ATV route comes within 1,500 feet of the placement residence. The Town further alleged that its police department had not been formally consulted regarding Montgomery's placement within the Town's boundaries and thus the committee failed to fulfill the requirement under WIS. STAT. § 980.08(4)(dm)2. that it "shall consult with a local law enforcement agency having jurisdiction over the residential option" "[w]hen preparing the [committee's] report."[11] At the motion hearing, both the State and Montgomery took the position that the committee had complied with the pertinent statutory requirements, but neither party disputed the Town's allegations that the ATV route comes within 1,500 feet of the residential placement address or that the Town's police department had not been formally consulted as part of the compilation of the report.

---

[11] There is no dispute that at all relevant times the Town of Mentor contracted with the Village of Merrillan's police department to provide law enforcement services for the Town. For ease of reference, we will refer to this as the Town's police department.

21

¶39    With this background in mind, we conclude that the Town fails to establish the two ways in which it alleges that the committee's actions failed to comply with WIS. STAT. § 980.08(4)(dm).

¶40    First, the Town fails to show that the fact that the placement report does not identify the ATV route's proximity to the placement residence as an issue demonstrates noncompliance with WIS. STAT. § 980.08(4)(dm). Under § 980.08(4)(dm)1.a., the legislature has designated the kinds of areas that must be further than 1,500 feet from residential placement options. Most pertinent here, this includes "school premises, child care facilit[ies], public park[s], place[s] of worship, or youth center[s]." *See* § 980.08(4)(dm)1.a. We do not discern a developed argument by the Town that a road's public right-of-way being designated as an ATV route would fit within the meaning of any statutorily named area, and we see no basis to so conclude. While a major focus of § 980.08(4)(dm)1.a. is on areas that tend to be frequented by children, the statute does not include more general catchall language matching what the Town refers to broadly as "attractions for children." Further, the statutory list of areas omits any number of obvious areas that would fit such a broad category. Put differently, the statute does not require that the committee must, as the Town puts it, "avoid areas with children" in an absolute sense. Further, as Montgomery argues, the Town fails to explain how an ATV route is different in kind for this purpose than virtually all manner of roads and paths that young people would be expected to sometimes ride or walk along.

¶41    The Town relies on a footnote of our decision in *McGee* in which we concluded that the failure of a committee to include information about a bike trail and nearby designated fishing area in the area of a supervised placement residence violated reporting requirements in WIS. STAT. § 980.08(4)(f) (2015-16) that are in

22

many respects substantially similar to the requirements of current WIS. STAT. § 980.08(4)(dm). *See* ***McGee***, 376 Wis. 2d 413, ¶21 n.5 (citing § 980.08(4)(f)2. (2015-16) (placement residence should be "not less than 1,500 feet from any … public park")). The Town specifically argues that, because we stated in ***McGee*** that the existence of the nearby bike trail and fishing area was "vital" information that had to be included in the placement report in ***McGee***, it follows that the committee here should have noted the proximity of the ATV route to the placement residence and on that basis should have recommended a different placement residence to the circuit court. *See* *id.*, ¶¶9, 21 n.5. However, a combination bike trail and fishing area is recognizable as being akin to a "public park" that must be accounted for under both versions of the supervised placement statute, in contrast with the mere designation of a public road's right-of-way for use by ATVs.

¶42    Moving to the local law enforcement consultation topic, to repeat, the committee's formal consultation was with the sheriff's department and not with the Town's police department. There is no dispute that the sheriff's department has jurisdiction over the specific residence where Montgomery was placed. *See* WIS. STAT. § 59.28(1) ("Sheriffs … shall keep and preserve the peace in their respective counties"). The Town essentially contends that the sheriff's department is not sufficiently "local" for purposes of WIS. STAT. § 980.08(4)(dm)2. and that the Town's police department is "the only true 'local' law enforcement." As part of these contentions, the Town states (without dispute from any party) that the sheriff's department is located 20 miles from the

23

placement residence, as compared to the Town's police department, which is six miles away.[12]

¶43     We agree with the State and Montgomery that it is significant that WIS. STAT. § 980.08(4)(dm)2. charges the committee with consulting with "*a local* law enforcement agency," not "*the* … agency," clearly contemplating situations in which more than one agency has jurisdiction and qualifies as "local." *See* ***State v. Arberry***, 2018 WI 7, ¶19, 379 Wis. 2d 254, 905 N.W.2d 832 ("'The' is a definite article 'used as a function word to indicate that a following noun … refers to … something that is unique.'" (quoted source omitted)).  Similarly, in looking to closely related statutory language in a separate § 980.08 provision addressing local law enforcement agencies, we see that the legislature has expressly referred to "the municipal police department … for the municipality … in which the person will be residing." *See* § 980.08(6m).  No such language is used here, only the more general "local law enforcement agency."

¶44     As to whether the sheriff's department here is "local" for purposes of the notification requirement in WIS. STAT. § 980.08(4)(dm)2., we note that "local" generally means "of, relating to, or characteristic of a particular place[;] not general or widespread," or "primarily serving the needs of a particular limited

---

[12] The Town appears to base an argument on law enforcement response time that we reject as undeveloped.  In referring to the relative distances between, on the one hand, the placement residence and, on the other, the Town's police department or the county's sheriff's department, the Town takes the position that the sheriff's department would necessarily have a slower response time to calls for service at or around the placement residence.  But the Town fails to explain why, in the event of a call for service at or around the placement residence, the Town's police department would not respond rather than or in addition to the sheriff's department.  The Town does not argue that its police department was not provided with some form of notice of the residential placement under WIS. STAT. § 980.08(6m), nor does it argue that its police department would be for some reason incapable of responding to calls for service.

district." *Local*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/local (last visited Nov. 9, 2021). Applying a plain language interpretation to § 980.08(4)(dm)2., the only reasonable view is that the sheriff's department is "local" because it serves the needs of Clark County and not some larger area. The Town fails to establish that the sheriff's department is not "a local law enforcement agency."

*Forfeiture*

¶45   The Town asserts that it should be allowed to intervene because it needs to advocate in the circuit court for the position that Montgomery does not meet the criteria for supervised release provided in WIS. STAT. § 980.08(4)(cg). The Town rests this assertion solely on the fact that the February 2020 examination report stated that Montgomery had not made "significant progress in treatment." Although aspects of the Town's argument are unclear, it appears to contend that the State did not adequately represent the Town's interest under § 980.08(4)(cg) because the State did not change its position in the circuit court based on the February 2020 examination report—that is, it did not argue based on the examination report that the court should reverse course on granting Montgomery supervised release. As part of this argument, the Town contends that Montgomery's purportedly improper supervised release impairs the Town's ability to advocate for its interest in the protection of the public in the Town under § 980.08(4)(cg). We reject this argument because the Town forfeited it by failing to raise it in the circuit court and we decline to disregard forfeiture.

¶46   "As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal." *State v. Dowdy*, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691. The purpose of this rule "is to enable the circuit

court to avoid or correct any error as it comes up, with minimal disruption of the judicial process and maximum efficiency." *State v. Counihan*, 2020 WI 12, ¶26, 390 Wis. 2d 172, 938 N.W.2d 530. "Further, the forfeiture rule gives the parties and the circuit court notice of an issue and a fair opportunity to address the objection." *Id.*, ¶27.

¶47 The Town does not dispute Montgomery's position that the Town failed to raise any issue in the circuit court regarding Montgomery's qualification for supervised release under WIS. STAT. § 980.08(4)(cg) or that it otherwise called attention to the February 2020 examination report. Indeed, the Town does not dispute Montgomery's contention that the Town explicitly disclaimed any argument that Montgomery meets the elements for supervised release under § 980.08(4)(cg).

¶48 Instead of contesting the fact of forfeiture, the Town contends that we should exercise our discretion to disregard it. *See Counihan*, 390 Wis. 2d 172, ¶27 ("The forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case."); *Marotz v. Hallman*, 2007 WI 89, ¶16, 302 Wis. 2d 428, 734 N.W.2d 411 (because rule against forfeiture does not relate to appellate jurisdiction, an appellate court may in its discretion consider an issue not raised in the circuit court). The Town notes that exercising the discretion to review a forfeited issue may be appropriate "[w]hen an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision." *See Marotz*, 302 Wis. 2d 428, ¶16 (quoted source omitted; alteration in *Marotz*). However, we conclude that the Town fails to show that it would be appropriate to disregard forfeiture here.

¶49 The Town observes that both issues—whether Montgomery qualifies for supervised release and whether the Town is entitled to intervention as a matter of right—have been fully briefed, and it suggests that both present exclusively issues of law. It is true that the issue of whether a circuit court should grant a petition for supervised release is an issue of law. *See Rachel*, 324 Wis. 2d 465, ¶19. However, our review of a circuit court's supervised release decision is based on a sufficiency-of-the-evidence standard that leaves for the circuit court, as the trier of fact, the role of weighing evidence, including whether to accept or reject expert opinions. *See State v. Brown*, 2005 WI 29, ¶¶40, 89, 279 Wis. 2d 102, 693 N.W.2d 715.[13] This standard of review is significant here because it is not at all clear how the State and the circuit court did in fact view, or could have reasonably viewed, the February 2020 examination report. We do not know how the examination report did or could reasonably affect the State's decision to remain a party to the stipulation with Montgomery or the court's decision to accept the stipulation and grant supervised release. Even putting aside the issue of whether the State could properly disavow a written stipulation under these circumstances, so far as we can tell on this record the State could have reasonably taken the position that it was appropriate to stand by its stipulation with Montgomery despite the conflicting expert opinion arising later in the proceedings. The

---

[13] In *State v. Rachel*, 2010 WI App 60, ¶19, 324 Wis. 2d 465, 782 N.W.2d 443, we explained that the sufficiency-of-the-evidence standard articulated in *State v. Brown*, 2005 WI 29, 279 Wis. 2d 102, 693 N.W.2d 715, continues to apply to the determination of whether to grant a petition for supervised release, despite the legislature's decision to alter the burden so that the committed person must prove by clear and convincing evidence that he or she qualifies for supervised release. *See also* WIS. STAT. § 980.08(4)(cg)-(cj); *State v. West*, 2011 WI 83, ¶75 & n.20, 336 Wis. 2d 578, 800 N.W.2d 929. For this reason, as noted in *Rachel*, we continue to defer to circuit court determinations regarding the credibility of witnesses and evaluations of evidence. *See Rachel*, 324 Wis. 2d 465, ¶20 (citing *Brown*, 279 Wis. 2d 102, ¶44).

27

conflicting expert opinions in the most recent examination reports presented an issue of fact that the State may well have reasonably anticipated that the circuit court would resolve in Montgomery's favor.

¶50 The Town also asserts that the issue of whether Montgomery is a proper candidate for supervised release despite the dueling expert opinions presents an issue of sufficient public interest to merit our disregarding its forfeiture. But it fails to develop a supported argument to that effect. The Town notes in passing that WIS. STAT. § 980.08(4)(cg) "will continue to govern sex offender supervised releases into the foreseeable future," but it does not explain how our addressing the merits of its argument about Montgomery's qualifications would aid in developing the law regarding the application of the statute.

¶51 The Town further argues that, because the February 2020 examination report was sealed in the circuit court case file as a confidential document, the Town had no way of knowing that Montgomery (according to the Town) does not meet the criteria for supervised release until after the examination reports became available to the Town through the record in this appeal.[14] However, the Town again fails to develop a supported argument that this should influence whether we apply the forfeiture rule here. In the absence of such an argument, we are not persuaded that we should consider the Town's reliance on the February 2020 examination report as a basis to potentially "blindside" the

---

[14] In opposing the Town's motion to seal its brief and appendix in this appeal (which this court denied), Montgomery briefly took the position that the Town should not have access to the WIS. STAT. § 980.07 examination reports, which are confidential. However, in substantive appellate briefing, neither the State nor Montgomery argues that we should disregard the Town's reliance on the examination reports because of their confidential nature and we do not further address the confidential nature of the examination reports.

circuit court with reversal. *See* ***State v. Rogers***, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) ("We will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum.").

¶52 We now briefly explain why, if we were to address the merits of the Town's intervention argument based on the February 2020 examination report, we would conclude that the Town has not shown that the State inadequately represented the Town's interest in the proceedings under WIS. STAT. § 980.08(4)(cg).

¶53 The Town contends that the State failed to fulfill its duty to see that all standards for supervised release under WIS. STAT. § 980.08(4)(cg) were met, but it does not dispute that the State had this duty. That is, the Town does not dispute the position, shared by Montgomery and the State, that the State is charged by § 980.08(4)(cg) with the duty of protecting the Town's interest with respect to whether Montgomery qualifies for supervised release. It is not disputed that the State has this duty whether the Town's interest in intervention is understood broadly as seeking to protect the safety of all persons in the Town or, as we explain above, understood narrowly as seeking to ensure compliance with each pertinent provision in § 980.08(4)(cg). Given this concession by the Town, it bears the burden of rebutting a presumption that the State adequately represented the Town in protecting its interest. *See* ***Helgeland***, 307 Wis. 2d 1, ¶¶89, 91. Pertinent here, it can rebut this presumption by showing that there was improper "collusion" between the State and Montgomery, that the State failed in its duties, or that the State had interests that were adverse to the interest of the Town. *See* ***id.***, ¶¶87, 89.

29

¶54 The Town's reliance on the purported significance of the February 2020 examination report to make this showing is problematic for the reasons noted above—the Town does not show that the State was required to conclude that Montgomery could not still meet his burden to qualify for supervised release under WIS. STAT. § 980.08(4)(cg), given the circuit court's role in weighing the significance of relevant aspects of the examination reports.[15] The Town points to the State's stipulation with Montgomery as evidence of the State's interests being adverse to the Town's interest, although the Town acknowledges that the fact of a stipulation could not be counted as "collusion per se." In any case, whatever argument the Town means to make on this point, the argument appears to have no content beyond what we have addressed regarding the February 2020 examination report. Moreover, all of the Town's arguments about Montgomery's qualification for supervised release under para. (4)(cg) fail to persuasively respond to the following reasonable position by the State: for the State to fulfill its specific duty to protect public safety, it needed to balance the potential negative consequences of Montgomery's possible *supervised release* against the possibility that he might obtain an order of *outright discharge*, under which he would not be subject to the conditions of supervised release, which could carry different or additional negative consequences. *See* WIS. STAT. §§ 980.08(6m)-(9) (provisions addressing conditions imposed on supervised release and the violation of conditions),

---

[15] It does not help the Town's position that the writer of the February 2020 examination report appeared to take the position that she would defer to the circuit court's acceptance of the conclusions in the October 2019 examination report. That is, after stating the conclusion that Montgomery did not meet the criteria for supervised release, the writer also stated, "However, I am aware that [Montgomery] was granted [supervised release] and I do not disagree with that ruling."

980.09(4) ("If the court or jury is satisfied that the state has not met its burden of proof …, the person shall be discharged from the custody of the department.").

## CONCLUSION

¶55     For all of these reasons, we affirm the circuit court's denial of the Town's motion to intervene as a matter of right.

*By the Court*.—Order affirmed.