COURT OF APPEALS
DECISION
DATED AND FILED

December 13, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP1747**

STATE OF WISCONSIN

Cir. Ct. No.  2019CV57

IN COURT OF APPEALS
DISTRICT III

---

SWANKE TIMBERLAND LIMITED PARTNERSHIP,

   PLAINTIFF-APPELLANT,

 V.

TOWN OF WITTENBERG, ROBERT L. PETERSON, LAWRENCE N. PETERSON, AS TRUSTEE OF THE LAWRENCE N. AND DARLENE M. PETERSON IRREVOCABLE TRUST DATED DECEMBER 26, 2012, DARLENE M. PETERSON, AS TRUSTEE OF THE LAWRENCE N. AND DARLENE M. PETERSON IRREVOCABLE TRUST DATED DECEMBER 26, 2012, PASQUALE J. DAVIS, AS TRUSTEE OF THE PASQUALE AND KRISTA DAVIS FAMILY TRUST U/D/O OCTOBER 23, 2007 AND KRISTA M. DAVIS, AS TRUSTEE OF THE PASQUALE AND KRISTA DAVIS FAMILY TRUST U/D/O OCTOBER 23, 2007,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Shawano County: KATHERINE SLOMA, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. In this lawsuit, Swanke Timberland Limited Partnership ("Swanke Timberland") sought a declaratory judgment that a segment of road ("the disputed segment") located in the Town of Wittenberg ("the Town") is a public highway. Following a bench trial, the circuit court determined that Swanke Timberland had failed to meet its burden of proof on that issue.

¶2      Swanke Timberland now appeals, arguing that the circuit court applied an incorrect burden of proof. Swanke Timberland asserts that under the circumstances of this case, the court should have presumed that the disputed segment was a public highway and placed the burden on the defendants to prove otherwise. In the alternative, Swanke Timberland argues that even if the court correctly allocated the burden of proof to Swanke Timberland, the court erred by finding that the disputed segment is not a public highway.

¶3      We conclude that Swanke Timberland forfeited its argument regarding the burden of proof by failing to raise that argument in the circuit court. We further conclude that the court's finding that the disputed segment is not a public highway is not clearly erroneous. Accordingly, we affirm the order denying Swanke Timberland's request for declaratory relief.

## BACKGROUND

¶4      This case involves a short segment of road in the Town that begins at the intersection of Bluebird Road and White Ash Lane and extends south approximately one-half mile to a dead end at the northern border of the Town of Germania. Swanke Timberland owns four parcels of real property in the Town of

Germania, which total approximately 204 acres. Two of those parcels were purchased by James Swanke, Sr., in 1957. It is undisputed that both of those original parcels were landlocked at the time of purchase. Thus, in order to access those properties, the Swankes and their guests needed permission to cross neighboring landowners' property. In 1998, James Swanke, Jr., ("Swanke") purchased two additional parcels in the Town of Germania, which are contiguous to the Swankes' other two parcels and are located immediately south of the disputed segment's southern terminus. Swanke Timberland assumed ownership of all four properties in 2011.

¶5    Two twenty-acre parcels on the west side of the disputed segment have been owned by the Peterson family since 1907 and are currently owned by the Lawrence N. and Darlene M. Peterson Irrevocable Trust. Together with other individuals, Robert Peterson ("Peterson") purchased three forty-acre parcels on the east side of the disputed segment from Wilfred and Martha Ahles in 1988. Two of those parcels are adjacent to the disputed segment. The Pasquale and Krista Davis Family Trust subsequently acquired an ownership interest in the parcels on the east side of the disputed segment. We refer to the owners of the properties on either side of the disputed segment, collectively, as "the Peterson defendants."

¶6    Swanke Timberland filed the instant lawsuit against the Town and the Peterson defendants in April 2019, seeking a declaration that the disputed segment "is an unrecorded highway extending to the Wittenberg-Germania town line and the Swanke Property." The circuit court held a three-day bench trial, during which Swanke testified that his family had used the disputed segment to access its property in the Town of Germania since the 1950s, and "never once did anybody say to me, you know, you don't have permission to use this road." Conversely, Peterson testified that he expressly granted Swanke permission to use

the disputed segment in 2008 to conduct logging operations on Swanke Timberland's property, subject to certain conditions, but he later revoked that permission.

¶7    Evidence was also introduced at trial that Swanke Timberland's property was enrolled in the Managed Forest Land (MFL) program and was designated under that program as being open to the public for recreational activities. Peterson wrote to Swanke in 2008, 2012, and 2014, expressing concerns about members of the public using the disputed segment to access Swanke Timberland's property.

¶8    In October 2017, an incident occurred in which a Town employee trimmed trees along the disputed segment after Peterson informed the employee that the disputed segment was private property and told him to leave. Following that incident, Peterson met with the Town's chairman, Richard Beversdorf, and asserted that the disputed segment had "always been private property." As a result of that meeting, Beversdorf conducted an investigation to determine whether the Town owned the disputed segment. During that investigation, Beversdorf spoke with representatives from the Shawano County Register of Deeds office, a title company, the Wisconsin Department of Transportation (DOT), and the Wisconsin Department of Natural Resources. Beversdorf also consulted the Town's attorney, Lee Turonie.

¶9    Following Beversdorf's investigation, Turonie wrote to Peterson's attorney on June 29, 2018, stating that the Town had reviewed "all available records" and had found "no evidence" that the disputed segment "is or has ever been a Town highway." Beversdorf subsequently signed estoppel certificates for each of the Peterson defendants' four parcels adjacent to the disputed segment.

Each estoppel certificate stated that the Town had "researched and reviewed the issue and … determined that the Town does not have any Town road or other rights to [the disputed segment]." The estoppel certificates further stated that the Town "disclaims any Town public road right or thoroughfare on [the disputed segment]" and that the disputed segment "is a private road."[1]

¶10     After Beversdorf signed the estoppel certificates, Peterson erected a gate to block members of the public from using the disputed segment. It is undisputed that without the ability to use the disputed segment, Swanke Timberland's property is landlocked. In other words, there is no public road leading to the property, and in order to access the property, Swanke Timberland must obtain permission to cross neighboring land. Due to the Town's determination that the disputed segment was not a public road, Swanke Timberland's property was forced into "closed" status under the MFL program, causing an increase in Swanke Timberland's property taxes.

¶11     Following the bench trial, the parties submitted written closing arguments. The circuit court subsequently issued a written decision that adopted the reasoning set forth in the Town's closing argument. The court explained that

---

[1] Less than one month after Beversdorf signed the estoppel certificates, the Town Board passed a resolution stating that it was in the "public's best interest to abandon" the disputed segment and that the disputed segment was therefore "vacated and discontinued pursuant to the provisions of Sec. 66.1003(4)[,] Wis. Stats." On appeal, neither the Town nor the Peterson defendants rely on this resolution or argue that the Town properly vacated the disputed segment under the procedure set forth in WIS. STAT. § 66.1003 (2019-20). Instead, the Town and the Peterson defendants argue that the disputed segment was never a public road in the first place, and, as a result, there was no need for the Town to formally discontinue the road using the statutory process.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

in order to prove that the disputed segment was a public road, Swanke Timberland needed to establish "either the elements of common law dedication or petition by the property owners or both." Based on the evidence presented during the bench trial, the court found that Swanke Timberland had failed to meet its burden. The court then concluded that because it could not "find the existence of a public road," it could not find that the Town "had any obligation to follow statutory procedures to discontinue a public road." The court explained, "After extensive review and due diligence, the Town recognized that it did not own the road. As such, the actions of the Town to execute [the estoppel certificates] were justified."

¶12 The circuit court later entered a final order denying Swanke Timberland's request for declaratory relief. Swanke Timberland now appeals. Additional facts are included below where necessary.

## DISCUSSION

### I. Burden of proof

¶13 On appeal, Swanke Timberland first argues that the circuit court erred by applying an incorrect burden of proof. Citing *Mushel v. Town of Molitor*, 123 Wis. 2d 136, 140-41, 365 N.W.2d 622 (Ct. App. 1985), the court stated there is no presumption that a road is a public highway. The court also relied on *Mushel* for the proposition that Swanke Timberland, as the party seeking a declaration that the disputed segment was a public road, had the burden of proof on that issue.

¶14 Swanke Timberland argues that under the circumstances of this case, the circuit court should have instead applied a rebuttable presumption that the disputed segment was a public road and placed the burden on the defendants to

6

rebut that presumption. Swanke Timberland emphasizes that "the Town of Wittenberg's records were unintentionally destroyed by flooding in the basement of the town hall approximately fifty years ago." Swanke Timberland asks this court to hold, as a matter of first impression, "that when a municipality allows the records for a roadway to be lost or destroyed there arises a rebuttable presumption that the roadway was public."

¶15 We agree with the Town and the Peterson defendants that Swanke Timberland forfeited this argument by failing to raise it in the circuit court.[2] During the circuit court proceedings, both the Town and the Peterson defendants argued that Swanke Timberland had the burden to prove that the disputed segment was a public road. The Town, in particular, cited *Mushel* for the propositions that: (1) there is no presumption that a road is a public highway; and (2) the burden rests with the plaintiff to prove that a disputed area is a public road. Swanke Timberland did not argue that the Town's reliance on *Mushel* was misplaced. Nor did Swanke Timberland argue that, because of the destruction of unspecified Town records fifty years earlier,[3] the court should apply a rebuttable presumption that the disputed segment was a public highway.

¶16 "Arguments raised for the first time on appeal are generally deemed forfeited." *Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786

---

[2] The Town and the Peterson defendants actually assert that Swanke Timberland "waived" its argument regarding the burden of proof. The proper term for this concept, however, is forfeiture. *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (distinguishing between waiver and forfeiture).

[3] As the Peterson defendants note, although the record contains evidence that some of the Town's records were destroyed or damaged by water in the early 1970s, there is no evidence to show that the destroyed records included any records related to the disputed segment.

N.W.2d 810. Accordingly, this court need not address an argument that is raised for the first time on appeal. *See State v. Van Camp*, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997). "We will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum." *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).

¶17    In its reply brief, Swanke Timberland observes that the forfeiture doctrine is a rule of judicial administration, and a reviewing court may therefore disregard a forfeiture and address the merits of an unpreserved issue. *See Town of Mentor v. State*, 2021 WI App 85, ¶48, 400 Wis. 2d 138, 968 N.W.2d 716. We may exercise our discretion to disregard a forfeiture "where the issue is one of law, the facts are not disputed, the issue has been thoroughly briefed by both sides and the question is one of sufficient interest to merit a decision." *City News & Novelty, Inc. v. City of Waukesha*, 170 Wis. 2d 14, 20-21, 487 N.W.2d 316 (Ct. App. 1992).

¶18    As the Peterson defendants note, the relevant facts in this case are disputed. Moreover, we agree with the Peterson defendants that if Swanke Timberland had raised its argument regarding the burden of proof in the circuit court, the court "would have had the opportunity to make specific factual findings as to whether the Town … and the Peterson defendants had met their burden to rebut the presumption that the disputed segment was a public highway." The court could have also made additional factual findings regarding the Town's damaged or destroyed records. Swanke Timberland's failure to raise its argument regarding the burden of proof below also deprived the defendants of the opportunity to introduce evidence tailored to meeting that burden. Under these circumstances, we decline to disregard Swanke Timberland's forfeiture, and we will not address its argument regarding the burden of proof.

## II. Determination that the disputed segment is not a public road

¶19 Swanke Timberland next argues that even if the circuit court correctly allocated the burden of proof to Swanke Timberland, the court erred by finding that the disputed segment is not a public road. Following a bench trial, a circuit court's findings of fact must be affirmed on appeal unless they are clearly erroneous. WIS. STAT. § 805.17(2). A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence. *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615. Stated differently, we will affirm a circuit court's factual finding as long as the evidence would permit a reasonable person to make the same finding, even though the evidence would also permit a contrary finding. *Reusch v. Roob*, 2000 WI App 76, ¶8, 234 Wis. 2d 270, 610 N.W.2d 168. We "search the record for evidence to support the [circuit] court's findings of fact." *Mentzel v. City of Oshkosh*, 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988).

¶20 Swanke Timberland argues that the evidence introduced at trial showed that the disputed segment became a public road under the doctrine of common law dedication.[4] Common law dedication requires proof of two elements: (1) an explicit or implicit offer to dedicate land—in other words, an intent to dedicate land to the public; and (2) an acceptance of the offer by the municipality or the general public. *Vande Zande v. Town of Marquette*, 2008 WI App 144, ¶8, 314 Wis. 2d 143, 758 N.W.2d 187. After three days of trial

---

[4] In addition to finding that the disputed segment was not a public road under the doctrine of common law dedication, the circuit court also found that the disputed segment was not established as a public road by petition or condemnation. On appeal, Swanke Timberland does not challenge the court's finding in that regard. Instead, Swanke Timberland's appellate arguments pertain solely to the doctrine of common law dedication.

9

testimony, the circuit court found that there was "no factual evidence of an intent to dedicate the property on the part of the owner." That finding is not clearly erroneous.[5]

¶21 Two title examiners testified at trial—Patrick Thomas and Amy Kane. Thomas testified that he had conducted a title search regarding the parcels adjacent to the disputed segment. During that search, he found no deed conveying the disputed segment to the Town for road purposes, no order laying out a town road at that location, no certified survey map pertaining to the disputed segment, and no evidence that any portion of the properties adjacent to the disputed segment had been excepted for road purposes.

¶22 Kane testified that she had reviewed title records from "patent forward"—meaning from the time the government "granted the first land out to individuals"—to determine whether any of the records "had anything about roadways or any individuals giving [property] to the Town … stating that this was to be used for roadway." Kane testified that she did not find any order laying out a public road, any deed to the Town for roadway purposes, or any certified survey

---

[5] The issue of intent to dedicate "is usually resolved by the trier of fact and, upon review by this court, is subject to the clearly erroneous rule." *Cohn v. Town of Randall*, 2001 WI App 176, ¶7, 247 Wis. 2d 118, 633 N.W.2d 674. However, this court has previously stated that where the "grantor has long since passed away and the only evidence available to glean [the grantor's] intent is documentary evidence in the form of recorded plats and deeds," this court is "in just as good a position as the trial court to make factual inferences based on documentary evidence," and, accordingly, we "need not defer to the [circuit] court's findings." *Id.*

Citing *Cohn*, Swanke Timberland argues that we should independently review whether the documentary evidence in the record establishes an intent to dedicate the disputed segment for public use. As the Town correctly notes, however, the documentary evidence in this case is inconsistent. The parties therefore presented witness testimony at trial regarding the history and effect of the various documents, and the circuit court considered and weighed that testimony in reaching its decision. We agree with the Town and the Peterson defendants that, under these circumstances, application of the clearly erroneous standard of review is appropriate.

map of the relevant area. Kane also testified that she reviewed the real estate tax records for the properties adjacent to the disputed segment and did not find any reference to the disputed segment being a town road.

¶23   Kane explained that she did find an exception for roadway purposes in two deeds recorded in 2016. Those deeds, both of which involved Bay Title, each contained the phrase "[l]ess and excepting that part for roadway purposes." Kane testified that in her experience, that phrase was "standard" language "typically seen" on Bay Title deeds. Kane explained that her title company "does not put that [language] in there unless I find a document that is specifically a road document that I can except out that part described in a document number." Kane also testified that the 2016 deeds containing the phrase "[l]ess and excepting that part for roadway purposes" involved only the parcels on the east side of the disputed segment. The deeds for the parcels west of the disputed segment did not contain any similar language.

¶24   The circuit court addressed the title examiners' testimony in its written decision, noting that the only documents of title that "referenced a roadway" were drafted in 2016. The court stated it could not find "that those two deeds, late in the chain of title[,] … prove an intent to dedicate."

¶25   Evidence was also introduced at trial regarding plat maps of the relevant area. Plat maps from 1911, 1915, 1920, 1924, 1947, 1952, and 1955 show Bluebird Road—the public road north of the disputed segment—extending south to the Town of Germania border. Conversely, plat maps from 1960, 1961, 1966, 1968, 1971, 1973, 1975, 1978, 1980, 1982, 1984, 1986, 1988, 1990, 1992, and 1995 do *not* show Bluebird Road extending south to the town line. Subsequent plat maps, however, again show Bluebird Road extending south to the

border. During her trial testimony, Kane explained that plat maps are not "title documents."

¶26 In its written decision, the circuit court observed that the early plat maps were hand-drawn, and there was no evidence of "what information the illustrator relied upon in creating the plat map[s]." The court also noted that there was "no testimony as to what information later mapmakers used to create more recent plat maps" and "no indication any document of title was relied upon." The court therefore reasoned that the conflicting plat maps provided "no definitive proof of intent to dedicate." The court also noted that plat maps are not "documents of title."

¶27 The parties also introduced evidence at trial regarding DOT gas tax maps. Like the plat maps, the DOT maps are inconsistent. A 1932 DOT map shows Bluebird Road extending south to the Town of Germania border. On a 1938 DOT map, however, the portion of Bluebird Road south of White Ash Lane is crossed out. DOT maps from 1939 and 1940 show Bluebird Road ending at the intersection with White Ash Lane. DOT maps from 1958, 1961, 1970, and 1971 show Bluebird Road extending south past White Ash Lane but ending prior to the Town of Germania border. More recent DOT maps show Bluebird Road extending south to the town line. The Town's former clerk, Allen Kohn, testified that DOT maps do not represent legal title to property.

¶28 The circuit court noted that the DOT maps are inconsistent and "appear to depict Bluebird Road differently at different times in history." The court stated there was "no evidence in the record as to why the court should rely on one particular map or even a series of DOT maps" and no evidence supporting a finding "that these maps show evidence of intent to dedicate." The court

12

acknowledged that the Town "may have utilized the maps for tax collection purposes," but it reasoned that such use by the Town "does not prove that an *owner* had an intent to dedicate the road." (Emphasis added.) As with the plat maps, the court also noted that DOT maps are not "documents of title."

¶29 In addition to the evidence discussed above, testimony was also introduced at trial that the adjacent property owners had treated the disputed segment as private property since at least the 1970s. Peterson testified that he had been going to his family's properties on the west side of the disputed segment since the late 1960s and "distinctly remember[ed]" that the disputed segment was posted as private "all the way back in the 70s." Peterson also testified that Wilfred Ahles, one of the prior owners of the parcels on the east side of the disputed segment, had posted "no trespassing" signs on his side of the disputed segment. Ahles told Peterson in the mid-1980s that the disputed segment was "definitely private property." Peterson also testified that he had granted Swanke permission to use the disputed segment in 2008 to conduct logging operations on Swanke Timberland's property, subject to certain conditions, but he later revoked that permission. All of this evidence supports a finding that, from the 1970s onward, the owners of the properties adjacent to the disputed segment treated the disputed segment as private property and did not intend to dedicate it for public use.

¶30 The evidence summarized above supports the circuit court's finding that there was no intent to dedicate the disputed segment to the public. In support of its claim that the court should have made a contrary finding, Swanke Timberland cites deeds from 1927 and 1946. In 1927, two parcels of land directly west of the disputed segment and two portions of what is now Swanke Timberland's property in the Town of Germania were conveyed to John and Lottie

13

Peterson. In 1946, John and Lottie sold the two parcels adjacent to the disputed segment to Andrew and Edna Peterson. Two months later, John and Lottie sold their parcels in the Town of Germania to Earl and Mavis Dallman. None of these deeds mentioned Bluebird Road or reserved a private right-of-way to the lots located in the Town of Germania.

¶31 Based on the 1927 and 1946 deeds, Swanke Timberland asserts that

> [i]t is entirely unreasonable to infer that when John and Lottie Peterson conveyed the Town of Wittenberg lots in 1946 … they intended to landlock the Town of Germania lots, which they sold just two months later to the Dallmans—but landlocking their unsold lots is precisely what they would have done if [the disputed segment] was private, as they did not grant of an easement in the deed to the Dallmans.

Swanke Timberland instead asserts that the only reasonable inference from the 1927 and 1946 deeds is that the disputed segment "was a public road and so no conveyance of private easement rights was necessary."

¶32 We disagree. To be sure, the inference that Swanke Timberland draws from the 1927 and 1946 deeds is one reasonable inference that could be drawn from those documents. It is also reasonable to infer, however, that when John and Lottie Peterson conveyed their parcels adjacent to the disputed segment to Andrew and Edna Peterson in 1946, John and Lottie did not believe that they needed to reserve a private right-of-way to their Town of Germania lots because they had an informal arrangement with Andrew and Edna (or with the owners of the property on the other side of the disputed segment) allowing them to use the disputed segment to access their Town of Germania lots. It is also reasonable to infer that John and Lottie knowingly conferred landlocked parcels to the Dallmans in 1946—again, with the understanding that the Dallmans could make informal

14

arrangements with neighboring property owners to access those parcels. Notably, it is undisputed that both of Swanke Timberland's original parcels in the Town of Germania were landlocked at the time of purchase and that the Swankes therefore had to obtain permission to access those lots by crossing neighboring property. Thus, it is not outside the realm of reason that John and Lottie would have taken actions in 1946 that created landlocked parcels.

¶33   Swanke Timberland also asks us to "consider and give weight to" a 1998 letter, in which Kohn asserted that Bluebird Road was a public road extending to the Town of Germania line. In the letter, Kohn claimed that the "beginnings of this road cannot be researched due to the fact that the original minutes of when the road was adopted or accepted are no longer legible." Nevertheless, Kohn asserted that "[t]his and many other roads were not conveyed to the town by deed, but were accepted by [petition] from landowners near the turn of the century." Kohn also claimed that he knew "from personal memory that the town has received highway revenues from the State of Wisconsin for more than 25 years on this road."

¶34   Kohn's letter does not show that the circuit court's finding of a lack of intent to dedicate is clearly erroneous. Instead, we agree with the Town that the "language of Kohn's letter suggests that Kohn simply assumed, without documentary evidence, that the road was a public highway." Kohn conceded in his letter that there were no records available regarding the "beginnings of the road," and he provided no support for his claim that the disputed segment was "accepted by [petition] from landowners near the turn of the century." Additionally, the fact that the Town may have received highway revenues from the state for the disputed segment does not mean that the relevant *property owners* intended to dedicate the disputed segment for public use.

¶35 For all of the reasons discussed above, we conclude the circuit court's finding that there was no intent to dedicate the disputed segment to the public is not clearly erroneous—that is, the court's finding in that regard is not against the great weight and clear preponderance of the evidence. *See* ***Phelps***, 319 Wis. 2d 1, ¶39. As such, Swanke Timberland failed to meet its burden to establish the first element of common law dedication. Accordingly, the court properly found that the disputed segment is not a public road.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.