In re the commitment of Tory L. Rachel:

State of Wisconsin, Petitioner-Respondent,

v.

Tory L. Rachel, Respondent-Appellant.

Court of Appeals

No. 2009AP1132. *Submitted on briefs January 27, 2010.
—Decided March 24, 2010.*

2010 WI App 60

(Also reported in 782 N.W.2d 443.)

466

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Donald V. Latorraca*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Tory L. Rachel appeals from an order denying his petition for supervised release from his WIS. STAT. ch. 980 (2007–08)[1] commitment. He contends that the circuit court applied the wrong legal standard and misplaced the burden of proof on him rather than on the State when denying his petition. The circuit court held that Rachel must prove by clear and convincing evidence that the criteria for granting supervised release were satisfied. Because the legislature has extensively revised the relevant statutes, and because the circuit court properly interpreted the implications of these revisions, we affirm the order of the circuit court.

## BACKGROUND

¶ 2.  In August 1994, the State filed a petition for WIS. STAT. ch. 980 commitment of Rachel, alleging he was a sexually violent person. After several years of litigation, the circuit court entered a judgment and commitment order on November 12, 1999. Rachel has remained confined at either the Wisconsin Resource Center (WRC) or the Sand Ridge Secure Treatment Facility since that time.

¶ 3.  On March 20, 2006, the State filed a notice of Rachel's right to petition for discharge and included the required WIS. STAT. § 980.07 annual reexamination report. James Harasymiw, Psy.D., authored the report. The circuit court conducted a status hearing April 17, and Rachel indicated that he would likely pursue supervised release rather than discharge. Rachel followed with a petition for supervised release two months later.

---

[1] All references to the Wisconsin Statutes are to the 2007–2008 version unless otherwise indicated.

The circuit court appointed an expert to perform an examination and participate in the supervised release hearing on behalf of Rachel. *See* WIS. STAT. § 980.031(3).

¶ 4.   Over the next year, several events took place. Rachel asked the circuit court to appoint a different doctor to serve as his WIS. STAT. § 980.031(3) expert. In March 2007, Sand Ridge submitted an updated reexamination report authored by Dr. Harasymiw. In April, the court held a status hearing and ultimately appointed Luis Rosell, Psy.D., to replace Rachel's original defense expert. Dr. Rosell submitted his evaluation report in June and the court set the matter for a status hearing.

¶ 5.   On November 9, 2007, the supervised release proceedings began and continued through three separate hearings over approximately five months. Three witnesses testified. Dr. Harasymiw appeared on behalf of the State and Dr. Rosell on behalf of Rachel. Rachel also testified. On August 1, 2008, the circuit court announced its decision. It characterized the case as a "close call." The court noted that recent legislative changes to the supervised release statute placed the burden on a petitioner to show by clear and convincing evidence that supervised release should be granted. The court determined that Rachel failed to meet that burden and it denied the petition. Additional facts will be incorporated into our analysis as appropriate.

## DISCUSSION

¶ 6.   Rachel presents two issues on appeal. First, he argues that the circuit court erroneously placed the burden of proof on him. Second, he argues that if the burden was properly placed on him, the circuit court nonetheless imposed the wrong burden, opting for a standard of clear and convincing evidence rather than the lower burden of a preponderance of the evidence. We

begin with the allocation of the burden of proof. This requires us to interpret recent revisions to the supervised release statute, WIS. STAT. § 980.08.

¶ 7. The interpretation of statutes is a question of law that we review de novo. *State ex rel. Steldt v. McCaughtry*, 2000 WI App 176, ¶ 11, 238 Wis. 2d 393, 617 N.W.2d 201. Statutory interpretation "begins with the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). If the meaning of the statute is plain, we ordinarily stop the inquiry and apply that meaning. *Id.* The context in which a statute appears is relevant to its plain meaning, as is the history of the statute revealed in prior versions of the statute and legislative amendments to the statute. *Id.*, ¶ 48. Also relevant to a statute's plain meaning is prior case law interpreting the statute. *See Olstad v. Microsoft Corp.*, 2005 WI 121, ¶ 21, 284 Wis. 2d 224, 700 N.W.2d 139.

¶ 8. The violent sexual offender statutes were extensively revised by 2005 Wis. Act 434 (effective August 1, 2006). The State argues that when the legislature revised the supervised release statute, it relieved the State of the evidentiary burden to prove by clear and convincing evidence that the committed person should not be released and, as a result, the burden has shifted to the petitioner. Prior to changes mandated by 2005 Wis. Act 434, the statute included the following directive:

The court shall grant the petition [for supervised release] unless the state proves by clear and convincing evidence one of the following:

1. That it is still likely that the person will engage in acts of sexual violence if the person is not continued in institutional care.

2. That the person has not demonstrated significant progress in his or her treatment or the person has refused treatment.

WIS. STAT. § 980.08(4)(b) (2003–04). From the express language of the statute in effect at the time, our supreme court reasoned:

> According to WIS. STAT. § 980.08(4) [2003–04], the circuit court *starts in the position of having to grant a petition for supervised release.* The circuit court does not have to grant the petition if the State proves by clear and convincing evidence that the person is still a sexually violent person and that it is substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care . . . . The statute also sets forth four factors a circuit court may consider, along with other factors, in making its determination.
>
> Thus, if the circuit court decides that the State has failed to meet its burden, the circuit court does not have any option:   It "shall" grant Brown's petition for supervised release. If the circuit court decides, however, that the evidence is sufficient to prove the State's case by clear and convincing evidence, then the circuit court must deny Brown's petition.

*State v. Brown,* 2005 WI 29, ¶¶ 11–12, 279 Wis. 2d 102, 693 N.W.2d 715 (emphasis added) (footnote omitted).

¶ 9.   Under the revised statute, a circuit court starts in the position of having to *deny* a petition for supervised release. The new directive states:

> The court *may not authorize supervised release* unless, based on all of the reports, trial records, and evidence presented, the court finds that all of the following criteria are met:

471

1. The person has made significant progress in treatment and the person's progress can be sustained while on supervised release.

2. It is substantially probable that the person will not engage in an act of sexual violence while on supervised release.

3. Treatment that meets the person's needs and a qualified provider of the treatment are reasonably available.

4. The person can be reasonably expected to comply with his or her treatment requirements and with all of his or her conditions or rules of supervised release that are imposed by the court or by the department.

5. A reasonable level of resources can provide for the level of residential placement, supervision, and ongoing treatment needs that are required for the safe management of the person while on supervised release.

WIS. STAT. § 980.08(4)(cg) (emphasis added).

¶ 10.   Rachel argues that the legislature's silence on the placement of the burden of proof is telling. He interprets the revision to mean that no burden is assigned; rather, the circuit court must review all of the evidence presented and make a discretionary determination as to whether supervised release is appropriate. Rachel asserts that the legislature "would have recognized that not assigning a burden of persuasion to either party in a supervised release proceeding would essentially place the circuit court in the same discretionary decision-making role circuit courts perform at a criminal sentencing or at the dispositional phase of a termination of parental rights proceeding." Rachel emphasizes that the statute requires the circuit court to base a decision on "all of the reports, trial records, and evidence presented." *See* WIS. STAT. § 980.08(4)(cg). He

notes, "this provision does not draw any distinction based on the party that offered the information."

¶ 11. The State offers two primary counter-arguments.[2] First, it asserts that Rachel's position ignores the presumption in favor of institutional commitment of sexually violent persons. The new statute begins by directing the court to deny supervised release unless certain criteria are present. *See* WIS. STAT. § 980.08(4)(cg). Consequently, under Rachel's theory, the court would begin with a presumption of institutionalization, yet no party would have the burden to overcome the presumption. The State distinguishes this from a sentencing or the disposition of a TPR petition, neither of which contain a presumption in favor or against any particular outcome. The State also emphasizes that a sentencing court has the broad discretion to place whatever weight it deems appropriate on a particular sentencing factor. Also, at the dispositional hearing in a TPR matter, the court's analysis is driven by the best interests of the child rather than a presumption in favor of one disposition or another. In contrast, the State points out, the new statute sets forth five criteria that must be demonstrated to overcome the presumption of institutionalization.

¶ 12. A close look at the criteria supports the State's argument. The criteria that are to be affirmatively demonstrated include: a showing of "significant progress in treatment," a substantial probability that the petitioner will not re-offend while in the community,

---

[2] The State also asserts that Rachel waived his argument by failing to raise it in the circuit court. Because we anticipate that the question will recur, we choose to address the merits. *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 3, 273 Wis. 2d 76, 681 N.W.2d 190 (we have the inherent authority to address the merits of an unpreserved argument).

"reasonably available" treatment options in the community, a reasonable expectation that the petitioner will comply with treatment requirements, and a "reasonable level of resources" that will provide for ongoing treatment needs and "safe management" of the petitioner while on supervised release. *See* Wis. Stat. § 980.08(4)(cg). It would be impractical, if not absurd, to place the burden on the State to demonstrate factors weighing in favor of release because the State has no incentive to do so.

¶ 13. Second, the State argues that we should apply the general rule that a petitioning party bears the burden of proof. *See Sterlingworth Condominium Ass'n v. DNR*, 205 Wis. 2d 710, 726, 556 N.W.2d 791 (Ct. App. 1996). The legislature would have known that, when it removed the express assignment of the burden, this general rule would apply. When the legislature acts, we presume it acts with full knowledge of existing law. *See State v. Grady*, 2006 WI App 188, ¶ 9, 296 Wis. 2d 295, 722 N.W.2d 760, *aff'd*, 2007 WI 81, 302 Wis. 2d 80, 734 N.W.2d 364. The State encourages us to apply the five-factor test for allocation of the burden found in *Acuity Mut. Ins. Co. v. Olivas*, 2007 WI 12, ¶ 40, 298 Wis. 2d 640, 726 N.W.2d 258. These factors are: (1) the natural tendency to place the burden on the moving party, (2) special policy considerations, (3) convenience, (4) fairness, and (5) the judicial estimate of probabilities. *Id.*

¶ 14. Here, the State emphasizes that Rachel is the moving party, he has access to all of his records and to legal counsel, he has been adjudged a sexually violent person, and fairness considerations are built into the statutory commitment scheme. The State also observes that the judicial estimate of probabilities requires the court to consider which party should bear the risk of

failure of proof. *See id.*, ¶ 48. In this case, the question is whether a sexually violent person should bear the risk of continued institutionalization until the next review period or if the public should bear the risk of a sexually violent person returning to the community unprepared. The State urges that the risk of failure of proof should be allocated to the petitioner.

¶ 15.   We are mindful that the constitutionality of this statutory scheme relies on procedures for periodic review of a commitment order. *See State v. Post*, 197 Wis. 2d 279, 327, 541 N.W.2d 115 (1995), *cert. denied*, 521 U.S. 1118 (1997) (the opportunities to seek supervised release and discharge are sufficient to meet constitutional demands); *State v. Carpenter*, 197 Wis. 2d 252, 268, 541 N.W.2d 105 (1995), *cert. denied, Schmidt v. Wisconsin*, 521 U.S. 1118 (1997) (opportunities for supervised release and discharge "significantly detract" from arguments that WIS. STAT. ch. 980 is unconstitutional). We are also aware that the constitutional resilience of the evolving commitment scheme has been questioned. Following revisions by 1999 Wis. Act 9, which eliminated a circuit court's ability to order supervised release at the time of the original commitment and extended the length of time an offender had to wait to petition for supervised release, the supreme court nonetheless held the sexually violent persons commitment law constitutional. *See State v. Rachel*, 2002 WI 81, ¶¶ 9, 12, 69–70, 254 Wis. 2d 215, 647 N.W.2d 762. However, Justice Bablitch wrote in his dissent that he believed the new provisions ran afoul of constitutional due process and double jeopardy protections. *Id.*, ¶ 102 (Bablitch, J., dissenting). Justice Bradley wrote separately to state that the new law nearly crossed the line and that assumptions about good faith application of the law were "wearing thin." *Id.*, ¶¶ 72–75 (Bradley, J., concurring).

¶ 16.   Nonetheless, nothing in the revised statute has changed the requirement for periodic review of a Wis. Stat. ch. 980 commitment, and we conclude that the constitutionality of the commitment scheme is not disturbed. Rather, the plain language employed by the legislature convinces us that the burden of proof now rests on the petitioner to show that the five statutory criteria are met. *See* Wis. Stat. § 980.08(4)(cg) ("The court may not authorize supervised release unless . . . the court finds that all of the following criteria are met[.]"). The legislature's creation of a presumption in favor of continued commitment together with the affirmative criteria required to rebut that presumption signal the legislature's intent to reallocate the burden of proof, together with the risk of failure of proof, to the petitioner.

■

¶ 17.   This brings us to Rachel's second appellate issue, which asks what standard of proof is required. Our supreme court has identified the different standards as follows:

> There are two different burdens of proof that apply in civil actions:   fair preponderance of the evidence and clear and convincing evidence. The fair preponderance standard applies in ordinary civil actions. The clear and convincing standard applies in cases where public policy requires a higher standard of proof than in the ordinary civil action. This so-called middle burden of proof has been required in such cases as fraud, undue influence, and prosecutions of civil ordinance violations which are also crimes under state law.

*State v. Walberg*, 109 Wis. 2d 96, 102, 325 N.W.2d 687 (1982) (footnotes omitted).

¶ 18.   The circuit court adopted a standard of clear and convincing evidence without explanation. Rachel

advocates a preponderance of the evidence standard, arguing that the higher burden of clear and convincing evidence is too harsh. The State concedes that, in the absence of an express burden of proof, the preponderance of the evidence standard may be appropriate. Unless, that is, public policy demands the higher burden. We are convinced that it does. In *Carpenter*, 197 Wis. 2d at 271, the supreme court recognized the public safety implications of placing offenders in the community, stating:

> We conclude that the principal purposes of [Wis. Stat.] ch. 980 are the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future. These constitute significant nonpunitive and remedial purposes.

Protection of the public is a legitimate public policy concern and is implicated in the context of supervised release. *See, e.g., State v. Burris*, 2004 WI 91, ¶ 30, 273 Wis. 2d 294, 682 N.W.2d 812 (due process does not require that a court expressly consider alternatives before revoking a sexually violent person's supervised release when the court determines that the public safety requires the person's commitment to a secure facility). This policy of advancing public safety is reflected in Wis. Stat. § 980.08(4)(cg)2., which precludes a court from ordering supervised release unless it is "substantially probable that the person will not engage in an act of sexual violence while on supervised release." Thus, we conclude that the proper burden of proof on the § 980.08 petitioner is driven by public policy. Accordingly, the circuit court correctly held Rachel to a standard of clear and convincing evidence. *See Walberg*, 109 Wis. 2d at 102 (the middle burden derives from public policy).

¶ 19. Having determined that Rachel bore the burden of producing clear and convincing proof that supervised release was appropriate, our only remaining question is whether the circuit court erred when it held that Rachel did not meet his burden. In *Brown,* our supreme court specifically addressed whether a circuit court's denial of petition for supervised release should be classified on review as a determination of a question of law or as an exercise of circuit court discretion. *Brown,* 279 Wis. 2d 102, ¶ 8. The court held that when an appeal involves a circuit court's Wis. Stat. § 980.08(4) decision, the "reviewing court undertakes independent review of the record under the sufficiency of the evidence standard of review." *Brown,* 279 Wis. 2d 102, ¶ 5. In *Brown,* the court explained:

> Uniformity of application of facts to law, respect for circuit courts' reasoning, and recognition of circuit courts' observational advantage in evaluating evidence are desirable goals with respect to orders on [Wis. Stat. ch.] 980 petitions for supervised release. These goals are more likely to be achieved with the sufficiency of the evidence standard of review than with an erroneous exercise of discretion standard of review.

*Brown,* 279 Wis. 2d 102, ¶ 46. Although the *Brown* court focused on whether the State met its burden of proof, we ascertain no reason to depart from this principle in reviewing whether the petitioner has met his or her burden.[3]

---

[3] In a previous case, we certified the following question to the supreme court: "Whether Wis. Stat. § 980.08(4) (2005–06), which previously required the State to show by clear and convincing evidence that supervised release should not be granted and was reviewed using a sufficiency of the evidence

¶ 20. In our review of the sufficiency of evidence, we give deference to the circuit court's strength in determining the credibility of witnesses and in evaluating the evidence. *Id.*, ¶ 44. We recognize the evaluative aspects involved in a circuit court's denial of a petition for supervised release and acknowledge that circuit courts are better able than appellate courts to determine the credibility of witnesses and evaluate the evidence. *Id.* In making a determination about the sufficiency of evidence, we may draw not only on a circuit court's observational advantage, but also on the circuit court's reasoning. *Id.*

¶ 21. The circuit court specifically addressed the statutory criteria, relying on expert testimony as well as Rachel's testimony to reach its decision. The testimony began with Dr. Harasymiw, who diagnosed Rachel with three disorders: (1) paraphilia, not otherwise specified, hebephilia (attraction to adolescent females); (2) paraphilia, not otherwise specified, nonconsent; and (3) personality disorder not otherwise specified with antisocial features. Dr. Harasymiw also testified that Rachel had polysubstance dependence issues; specifically, that Rachel "abused a variety of mood-altering substances up to the degree that they have impaired his functioning, created problems in significant areas of his life such as legal, occupational, relational, and that despite this, [Rachel] has continued to use those substances." Dr. Harasymiw summed up that, based on

standard, has been revised such that appellate courts should now review the orders under an erroneous exercise of discretion standard." *State v. Thiel*, No. 2007AP2742 (Dec. 10, 2008). Certification was denied.

479

actuarial risk assessment tools, Rachel was "more likely than not to commit another sexual offense."

¶ 22. On cross-examination, Dr. Harasymiw stated that he had not confirmed Rachel's self-report of successful completion of a WRC treatment program. He also acknowledged that a 2001 report by another doctor made no mention of AODA issues or treatment needs. Dr. Harasymiw was concerned that although Rachel had shown improvement in his ability to form emotionally intimate and supportive friendships, Rachel did not sufficiently open up to others. However, Dr. Harasymiw agreed that he did not know whether Rachel had built friendships with others at either institution and was surprised to hear that five patients from Sand Ridge had kept in touch with Rachel after Rachel was transferred to the WRC.

¶ 23. Rachel's expert witness, Dr. Rosell, testified that he believed Rachel "ha[d] made sufficient progress for the Court to consider a supervised release." He stated that Rachel had a relapse prevention plan in place. Dr. Rosell explained that Rachel had completed the "core program," which required participants to address issues such as "identifying the factors that led to [the] offending behavior, learning how to identify the cognitive distortions . . . and then creating a relapse prevention [plan]." He testified that Rachel had "done a lot of treatment and he had done it fairly well, that he had an understanding of relapse prevention, [and] that he was continually revising his own plan." Dr. Rosell noted that the WRC reports indicated Rachel had a positive attitude, had insight, was calm, and related to groups well. He believed that Rachel would have the "opportunity to engage in treatment" in the community and that strict compliance with all of the rules of supervised release would be required.

¶ 24. Rachel explained to the court all of the treatment programs he had participated in at the WRC. These programs included a "Safer Society" sex offender program at the WRC, a "Smart Thinking Program" with AODA elements, a "Relapse Prevention" program that discontinued after Rachel had completed seven of the eight trimesters, and a group therapy program called "Gateway." Rachel then went to Sand Ridge where he was placed in "Pre-Core," which mirrored the Gateway program. He completed Pre-Core in August 2002 and then entered the "Core" program, which preceded another program called "Core Application Opportunity." In October 2004, Rachel was placed in a new program called "Responsible Thinking Skills," which was an ongoing program. In 2007, Rachel was transferred back to the WRC for a program called "MRT." At the time of the supervised release hearing, Rachel was preparing for a transfer back to Sand Ridge, where he expected to be placed in Pre-Core. Rachel's testimony revealed significant repetition in the content of the programs.

¶ 25. In its decision, the circuit court was clearly dissatisfied with the redundant nature of the programming offered to Rachel. It expressed its concerns on the record, noting what it described as an "illusive standard" and chiding the State for changing the programs and standards that applied to Rachel:

> Mr. Rachel should know what goals have to be met, what obstacles have to be overcome, what programs have to be satisfied and what's expected of him to reach the next level. He has had some setbacks. He has had some moving backward in the continuum of going through what is now Phases One, Two and Three. But by the same token, I think some of those backward steps were because of [the] change in program elements as opposed to [the] inability of him to meet those.

481

The court made extensive comments about the testimony of the experts and the results of certain tests and, it seems, reluctantly denied Rachel's petition for supervised release. In doing so, the court found that the State had "basically conceded" elements four and five of the statutory criteria: that Rachel could be reasonably expected to comply with his treatment requirements and a reasonable level of resources were available for Rachel's ongoing treatment needs while on supervised release. *See* WIS. STAT. § 980.08(4)(cg). Therefore, the court focused its analysis on the first three criteria.

¶ 26. The first factor requires both significant progress in treatment and the ability to sustain that progress. *See* WIS. STAT. § 980.08(4)(cg)1. The court noted that the records showed "substantial progress" in treatment and "extremely positive" feedback from the WRC. However, the court expressed concern about Rachel's ability to sustain the progress he had made. The court determined that Rachel should complete the "third phase of treatment" before he would be suitable for supervised release.

¶ 27. Moving to the second factor, the court considered whether it was substantially probable that Rachel would not engage in an act of sexual violence while on supervised release. *See* WIS. STAT. § 980.08(4)(cg)2. The court noted that Dr. Harasymiw could not answer that question in the affirmative, but Dr. Rosell seemed "more confident in that regard." The court also noted that an offender's opportunity to re-offend while on supervised release was limited by GPS monitoring and other supervision. While an offender might abscond and create an opportunity to re-offend, the court did not believe this was a risk with Rachel. Nonetheless, the court did convey its concern that a more detailed treatment plan for Rachel was

needed. Specifically, the court wanted to know how Rachel would be supervised and what meaningful and quality treatment would be implemented upon release.

¶ 28.  The remaining factor for Rachel to prove was that appropriate treatment by a qualified provider was reasonably available. *See* Wis. Stat. § 980.08(4)(cg)3. The court cited a letter from the supervised release manager at Sand Ridge, which stated: "If a patient is granted supervised release, meaningful and quality treatment will be made available in Kenosha County for any supervised release client." Nonetheless, the court stated that more evidence of services in the community would have been helpful. It stated, "[I]t would still be nice to have a greater understanding of . . . what actually is available, what would be proposed were [Rachel] to be released . . . ."

¶ 29.  Ultimately, the circuit court held that Rachel had failed to carry his burden to show three of the five criteria. The court indicated that Rachel had more work to do in "Phase Three" of his treatment, that a more "specific and definable" supervision plan was needed, and that the court required a "more definite manner . . . of treatment . . . that would assist [the] Court in knowing that there's not a substantial probability that Mr. Rachel would engage in sexual violence if he were on supervised release." Because Rachel did not show the court by clear and convincing evidence that he met the five criteria, the court denied his petition.

¶ 30.  We defer to the circuit court's credibility determinations in evaluating the evidence. *See Brown*, 279 Wis. 2d 102, ¶ 44. A circuit court is better able to determine the credibility of witnesses and evaluate the evidence. *Id.* Here, the circuit court did an exhaustive review of the evidence presented, showed familiarity

with the facts of the case and the tests and tools used to evaluate Rachel's treatment and progress, and explained in detail what criteria Rachel's proof failed to demonstrate. In our review, we draw not only on the circuit court's observational advantage, but also on the circuit court's reasoning, which was exemplary here. *See id.* We conclude that the evidence adduced at the hearing was sufficient to support the circuit court's denial of Rachel's petition.

## CONCLUSION

¶ 31. The legislature has revised WIS. STAT. § 980.08(4) to eliminate the State's burden of proof on a committed person's petition for supervised release. It now directs that a circuit court "may not authorize supervised release" unless it finds from all the evidence that five criteria are met. *See* § 980.08(4)(cg). The burden is now on the petitioner to demonstrate all criteria are met. Furthermore, because the WIS. STAT. ch. 980 commitment scheme implicates public policy, specifically public safety and security, we hold that the petitioner must meet the clear and convincing standard of proof to satisfy the criteria. Finally, we conclude that there was sufficient evidence to support the circuit court's determination that Rachel had not met the criteria. Therefore, we affirm.

*By the Court.*—Order affirmed.