COURT OF APPEALS
DECISION
DATED AND FILED

August 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP780-CR**

Cir. Ct. No. **2016CF1654**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DARRELL K. SMITH,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Darrell K. Smith appeals from a judgment convicting him of second-degree sexual assault and from an order denying postconviction relief. He alleges that his trial counsel was ineffective for failing to object at trial to the admission of: (1) statements made by a non-testifying sexual assault nurse examiner (SANE) on the ground that the statements violated Smith's constitutional right to confrontation; and (2) a photograph of Smith and testimony from two detectives that the Wisconsin Department of Corrections (DOC) supplied the photograph. In a previous appeal, we reversed a postconviction order that denied those claims without a hearing. *State v. Smith* (*Smith I*), No. 2021AP72-CR, unpublished slip op. (WI App Sept. 20, 2022). After remand, the circuit court conducted an evidentiary hearing and again denied Smith's claims. Based on the record, including the facts that the circuit court found following our remand, we now conclude that Smith's trial counsel was not ineffective. We therefore affirm.

## BACKGROUND

¶2 As set forth in *Smith I*:

> According to the criminal complaint, on February 6, 2016, A.B. was drinking with several friends, became intoxicated, and went to the Rave Bar, in Milwaukee.[1] The next thing A.B. remembered was waking up in the hospital. At the hospital, A.B. noticed that she was bleeding from her vagina and believed that someone may have had sex with her without her consent. A.B. later underwent a sexual assault examination. DNA swabs were taken and

---

[1] As in Smith's prior appeal, we use initials to refer to A.B., in accord with the policy "to protect the privacy and dignity interests of crime victims." *See* WIS. STAT. RULE 809.86 (2023-24). To protect those same interests, we also use initials to refer to one of the witnesses who testified in this case. All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

> submitted to the Wisconsin State Crime Lab for analysis. A forensic analyst located semen on the swabs, mapped a DNA profile of the semen, and entered it into the Combined DNA Index System (CODIS). The DNA profile from the semen was determined to match the known profile of Smith.

*Id.*, No. 2021AP72-CR, ¶2. The State charged Smith with second-degree sexual assault. *See* WIS. STAT. § 940.225(2)(cm) (2015-16) (prohibiting sexual intercourse with a person too intoxicated to give consent). The matter proceeded to a jury trial.

¶3     The nature of Smith's appellate claims requires that we provide a limited summary of the trial proceedings. D.G. testified that on the night of February 6, 2016, he was walking home near the UW-Milwaukee campus when he saw a car stop abruptly. He then saw a young woman "literally f[a]ll out of the car ... hands first onto the road." D.G. recognized the woman as A.B., and he went to help her just before the car sped away. D.G. testified that A.B. could not walk, and he had to carry her back to his home. A mutual friend then brought A.B. to Columbia St. Mary's Hospital.

¶4     A.B. testified that on February 6, 2016, when she was a college sophomore, she planned to go to a concert at the Rave Bar with three other women. She described drinking tequila and other liquor at a party before the concert, and she recalled getting into a friend's car with her companions for a ride to the bar. She did not remember anything after her arrival at the bar until she awoke in Columbia St. Mary's Hospital. While at the hospital, she discovered "quite a bit of blood" in her underwear, and she therefore feared that someone had sex with her the previous night. A.B. was then referred to a second hospital because Columbia St. Mary's did not conduct sexual assault examinations. At the second hospital, Aurora Sinai Medical Center (Aurora), a nurse swabbed A.B.'s

body, and A.B. completed "paperwork." A.B. testified that some months later, a police officer showed her a photograph and asked her if she had ever seen the man pictured. She said that she had not, and she could not identify him.

¶5 The State also offered the testimony of Laura Kollatz, a registered nurse and manager of the SANEs at Aurora. Kollatz acknowledged that she had not examined A.B. and that Christina Hildebrand, a SANE who formerly worked at Aurora, examined A.B. and wrote a sexual assault examination report. Smith's trial counsel initially objected to Kollatz's testifying about that report. Citing the "best evidence rule," counsel argued that "it would be preferable to have the SANE nurse who actually conducted the exam." The circuit court overruled the objection, finding no prejudice to Smith and explaining: "the State just doesn't get to introduce the testimony about what the witness saw because this witness didn't see anything. That puts the State at a disadvantage rather than an advantage."

¶6 Kollatz testified about the mechanics of a sexual assault exam, which includes taking vaginal and cervical swabs from the complainant and documenting any injuries. She also described the contents of Hildebrand's report regarding A.B.'s "full head to toe exam."

¶7 Detective Jolene Del Moral testified that she obtained a picture of Smith after DNA testing linked him to A.B.'s vaginal and cervical swabs. A second detective, Jon Charles, testified that he showed the picture to A.B. Both detectives testified that the "Wisconsin Department of Corrections" provided the picture. Charles then identified Smith in the courtroom as the person in the picture, and the circuit court admitted the picture as an exhibit.

¶8    Smith did not testify or offer any evidence. Through arguments of counsel and cross-examination, he conceded that he had sexual intercourse with A.B., and he presented a consent defense. The jury found Smith guilty as charged.

¶9    Smith moved for postconviction relief. He alleged that his trial counsel was ineffective for failing to object to Kollatz's testimony on confrontation clause grounds; and for failing to object both to the photograph of Smith and to the detectives' accompanying testimony that the DOC provided that photograph. In *Smith I*, we concluded that Smith's allegations were sufficient to warrant an evidentiary hearing under *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979), and we remanded the matter for a hearing.

¶10    Smith's trial counsel was the sole witness to testify at the *Machner* hearing. Trial counsel said that he had represented thousands of defendants in felony proceedings over the course of a career spanning more than 30 years. He believed that Smith had a strong consent defense in this case.

¶11    Trial counsel said that he learned shortly before the start of jury selection that Hildebrand was unavailable for trial and that the State intended to call Kollatz to testify about the content of Hildebrand's sexual assault examination report. Trial counsel explained that he elected not to object on confrontation clause grounds because the report showed that A.B. had not sustained physical injuries, and he therefore viewed the report as helpful to Smith's consent defense. Moreover, trial counsel believed that a successful objection to Kollatz's testimony would have led the State to seek an adjournment and then "drag [Hildebrand] to court." In trial counsel's view, the circuit court correctly assessed Hildebrand's absence as a disadvantage for the State: Hildebrand could have supplemented the report with her first-hand observations, while Kollatz was limited to the text of the

report. Trial counsel emphasized that his cross-examination elicited testimony from Kollatz that "nothing in the reports" showed that A.B. "was battered in some way."

¶12 Regarding Smith's claim that trial counsel should have objected to Smith's photograph and to testimony that the DOC supplied that photograph, trial counsel said that the testimony did not reveal why the DOC had Smith's photograph. Counsel therefore viewed the evidence as inconsequential, and he elected not to inflate the significance of the testimony by objecting to it.

¶13 The circuit court found trial counsel credible and believed that his actions and inactions reflected reasonable strategic decisions. The court concluded that trial counsel was not ineffective in any of the ways that Smith alleged and therefore denied the postconviction motion. Smith appeals.

## DISCUSSION

¶14 Claims of ineffective assistance of counsel are analyzed under a two-prong test requiring the defendant to prove both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must demonstrate that counsel made serious mistakes that cannot be justified as the exercise of objectively reasonable professional judgment. *Id*. at 688-90. To prove prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant's showing on one prong of the *Strickland* analysis is insufficient, a reviewing court need not consider the other. *Id.* at 697.

6

¶15 The issues of deficient performance and prejudice present mixed questions of fact and law. *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). "[W]e will not reverse the circuit court's findings of fact, that is, the underlying findings of what happened, unless they are clearly erroneous," but "whether counsel's behavior was deficient and whether it was prejudicial to the defendant are question of law," which we review independently. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

¶16 Smith claims that his trial counsel was ineffective for failing to protect his right to confront adverse witnesses, a right guaranteed in both U.S. CONST. amend. VI, and WIS. CONST. art. I, § 7. "We generally apply United States Supreme Court precedent when interpreting these clauses." *State v. Mattox*, 2017 WI 9, ¶20, 373 Wis. 2d 122, 890 N.W.2d 256 (citation omitted). As relevant here, the Supreme Court held in *Crawford v. Washington*, 541 U.S. 36 (2004), that "a defendant's right to confrontation is violated if the trial court receives into evidence out-of-court statements by someone who does not testify at the trial if those statements are 'testimonial' and the defendant has not had 'a prior opportunity' to cross-examine the out-of-court declarant." *Mattox*, 373 Wis. 2d 122, ¶24 (citation omitted).

¶17 In the briefs, the parties debate whether Kollatz's testimony violated Smith's confrontation clause rights in a manner prohibited by *Crawford* and its progeny, but we will not consider that question. We resolved it in *Smith I*, concluding that the testimony "violated Smith's right to confrontation." *Id.*, No. 2021AP72-CR, ¶25. The question before us is whether trial counsel's failure to protect that right constituted ineffective assistance. The postconviction proceedings demonstrate that the answer is no.

¶18 Trial counsel testified that he was familiar at the time of trial with confrontation clause jurisprudence generally and *Crawford* specifically. Trial counsel testified that he nonetheless chose not to object to Kollatz's testimony about the content of Hildebrand's report because the report showed that A.B. was not physically injured, and counsel therefore viewed the report as helpful to Smith's consent defense. Further, in counsel's view, a successful objection to Kollatz's testimony would not have prevented a jury from hearing the SANE evidence but would have spurred the State to seek an adjournment and subpoena Hildebrand. Counsel concluded that this would leave Smith in a worse position because Hildebrand, unlike Kollatz, could describe A.B.'s demeanor and manner of responding. The circuit court believed trial counsel's testimony and found that trial counsel acted as he did in order to further his trial strategy.

¶19 As a reviewing court, we defer to a circuit court's credibility assessments. *State v. Rachel*, 2010 WI App 60, ¶30, 324 Wis. 2d 465, 782 N.W.2d 443. The circuit court is best suited to make such assessments because, unlike this court, the circuit court can observe the witnesses and gauge the persuasiveness of their testimony. *State v. Carnemolla*, 229 Wis. 2d 648, 661, 600 N.W.2d 236 (Ct. App. 1999).

¶20 Smith nonetheless contends that the circuit court's findings are clearly erroneous. First, he emphasizes that his trial counsel at one point objected to Kollatz's testimony on the basis of the "best evidence rule." In Smith's view, this reflects that trial counsel's true strategy was to exclude Kollatz's testimony but that counsel failed to identify the correct basis for an objection. We are not persuaded.

¶21 Although trial counsel initially objected to Kollatz's testimony on the ground that "it would be preferable to have the SANE nurse who actually conducted the exam," the circuit court overruled the objection, finding that substituting Kollatz for Hildebrand "put the State at a disadvantage." Trial counsel testified in postconviction proceedings that, upon considering the court's ruling, counsel "agreed with [the] judge" and concluded that, in fact, Hildebrand was not "preferable" to Kollatz. Counsel therefore adjusted his strategy and decided not to raise a confrontation clause objection to Kollatz's testimony. Smith apparently does not believe trial counsel's testimony in this regard, but the court found trial counsel's explanation credible. Nothing in the record permits us to reject that finding. *See State v. Mull*, 2023 WI 26, ¶57, 406 Wis. 2d 491, 987 N.W.2d 707.

¶22 Smith offers a second reason that, in his view, the circuit court erred by crediting trial counsel's postconviction testimony. Trial counsel testified that Hildebrand's report helped Smith because it showed that A.B. did not sustain physical injuries on the night that she encountered Smith but, Smith argues, the report showed that "there *were* physical injuries to A.B." Smith's argument is disingenuous, and we reject it. As Kollatz testified, the report documented that A.B. had abrasions consistent with falling from a car onto a pavement rather than injuries consistent with a battery. The record thus supports rather than undermines the court's finding that trial counsel testified credibly about his strategic decisions. *See id.*

¶23 In sum, we see no basis to disturb the circuit court's findings that trial counsel assessed the litigation landscape and concluded that an order excluding Kollatz's testimony would have been more harmful than beneficial to Smith. In light of those findings, we consider whether trial counsel's decision to

forgo a confrontation clause objection to Kollatz's testimony was objectively reasonable. *See id.*, ¶58. It was. Counsel's actions furthered Smith's goal of demonstrating that nothing in the medical records suggested a battery to A.B. while avoiding the risk of the State's calling Hildebrand, who might have undermined the consent defense with unpredictable testimony about her observations. Because counsel's actions constituted an objectively reasonable strategic choice under the circumstances as they were unfolding at trial, counsel's performance was not deficient. *See State v. Breitzman*, 2017 WI 100, ¶64, 378 Wis. 2d 431, 904 N.W.2d 93.

¶24 We need not reach the question of prejudice, *see Strickland*, 466 U.S. at 697, and we decline to do so. We decide cases on the narrowest possible grounds. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

¶25 We turn to Smith's second claim of ineffective assistance of counsel. Smith faults his trial counsel for "failing to object to, and seek a remedy for, the admission of the [DOC] photograph of Smith, and testimony from two law enforcement officers which highlighted for the jury that the photo was obtained from the [DOC]." As a preliminary matter, we note that, notwithstanding the quoted heading under which Smith presents his claim, he does not offer any substantive discussion regarding counsel's failure to object to the photograph itself. Rather, the specifics of Smith's argument are that his counsel was ineffective for not objecting to "evidence that Smith's photo came from the [DOC]." Accordingly, we limit our discussion to that argument. *See State v. Flynn*, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994) (explaining that we will not consider undeveloped arguments).

¶26    The deficient performance prong of the *Strickland* analysis is again determinative.  Trial counsel testified at the postconviction hearing that he viewed the references to the DOC as vague and ultimately trivial.  Therefore, counsel said, he elected to let the references pass rather than draw the jury's attention to them and inflate their significance with an objection.  The circuit court credited trial counsel's testimony and found that counsel's inaction reflected a strategic decision.  We defer to that finding because it is supported by the record and not clearly erroneous.  *See Mull*, 406 Wis. 2d 491, ¶56.

¶27    We independently conclude that counsel's strategy was reasonable.  *See id.*, ¶58.  Indeed, "it is perfectly rational to decide not to draw further attention" to evidence that the jury has already heard.  *United States v. Gregory*, 74 F.3d 819, 823 (7th Cir. 1996).

¶28    Smith asks us to conclude otherwise, arguing that his trial counsel should have objected to the DOC references and then tried to minimize any damage from the objection.[2]  *Strickland* teaches, however, that "there are countless ways to provide effective assistance in any given case."  *Id.*, 466 U.S. at 689.  A reviewing court will therefore defer to counsel's choice unless the defendant shows that it was irrational or capricious.  *Breitzman*, 378 Wis. 2d 431,

---

[2] Smith also offers a fleeting suggestion that his trial counsel should have moved for a mistrial outside the presence of the jury.  Mistrial, however, is a drastic remedy, and "the law prefers less drastic alternatives, if available and practical."  *State v. Givens*, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998) (citation omitted).  As the State accurately points out, Smith neither develops an argument as to why the alleged error here warranted a mistrial nor shows that a motion for mistrial would have been granted.  Accordingly, Smith fails to show that his trial counsel performed deficiently by not making such a motion.  *See State v. Swinson*, 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12 (holding that "failure to bring a meritless motion does not constitute deficient performance").  We decline to develop an argument for him.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶65. Smith did not make such a showing. Rather, the testimony showed that counsel made a reasonable choice among those available. Counsel's performance was therefore not deficient. *See id.*, ¶71. For all the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.