# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 8, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1607**

**STATE OF WISCONSIN**

Cir. Ct. No. **2008CI1**

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE COMMITMENT OF: KEVIN LEDOUX

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

KEVIN LEDOUX,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Neubauer, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Kevin LeDoux appeals from a circuit court order denying his petition for discharge from his commitment as a sexually violent person under WIS. STAT. ch. 980 (2023-24).[1]  LeDoux challenges the court's determination that he is still sexually dangerous, meaning he is more likely than not to commit a future act of sexual violence if discharged from his commitment. On appeal, LeDoux argues that the State did not present sufficient evidence for a reasonable factfinder to conclude that he is sexually dangerous.  We agree with the circuit court and hold that the State presented sufficient evidence to demonstrate that LeDoux's condition has not improved sufficiently to warrant discharge.  The order is affirmed.

## BACKGROUND

¶2     The following basic facts are undisputed.  We will include additional facts as necessary to our discussion below.

¶3     LeDoux was convicted as a juvenile of attempted first-degree sexual assault in 1984 and second-degree sexual assault in 1985.  He was convicted as an adult of both first and second-degree sexual assault in 1988.  As one examining doctor explained, in committing these sexual offenses, "LeDoux acted on the intense and persistent sexual interests to non-consenting individuals by offending against at least three children and two adults."  As his most recent or "index" offense, LeDoux openly masturbated in front of a group of peers in prison.

¶4     LeDoux was committed to the Department of Health Services (DHS) under chapter 980 as a sexually violent person in 2009.  In 2021, the court granted

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

LeDoux's petition for supervised release and continued to preside over unsuccessful efforts to find LeDoux a place for the Chapter 980 committee to live in Kenosha County.[2]  In 2022, LeDoux filed the petition for discharge underlying this appeal.  A court trial was held on February 21 and 22, 2023.

¶5  Several doctors offered expert testimony at LeDoux's discharge trial. Dr. Krystine Jackson, a licensed psychologist at Sand Ridge Secure Treatment Center, evaluated LeDoux in August 2022 to determine whether he continued to meet the criteria for commitment.  Another licensed psychologist at Sand Ridge, Dr. Amelia Fystrom, evaluated LeDoux's treatment progress in July 2022 and prepared a Treatment Progress Report.  LeDoux called Dr. David Thornton, a licensed psychologist in private practice and former treatment director at Sand Ridge.  Dr. Thornton had prepared an evaluation for LeDoux addressing whether he continues to meet criteria for commitment as a sexually violent person.

¶6  Dr. Jackson diagnosed LeDoux with two disorders that predispose him to commit sexually violent acts, Unspecified Paraphilic Disorder and Antisocial Personality Disorder.  Addressing the Paraphilic Disorder diagnosis, Dr. Jackson wrote in her evaluation: "Mr. LeDoux's offense history, records, and self-reports indicated a high sexual drive, as well as arousal to children [and] force."  Dr. Jackson spoke of the violence and dangerousness of LeDoux's past

---

[2] As of the time briefing was completed in this appeal, neither the State nor Kenosha County had yet found a suitable place for LeDoux to live while on supervision, despite the circuit court having so ordered.  Online court records appear to indicate that the matter of suitable housing for LeDoux likely has since been resolved.  *See* Wisconsin Circuit Court Access, ***State v. Kevin LeDoux***, Kenosha County Case No. 2008CI1, Case history, wcca.wicourts.gov (visited Mar. 31, 2026).

sexual offenses, including his index offense of masturbating in front of other inmates while in prison.

¶7 Dr. Jackson explained that she diagnosed LeDoux with Antisocial Personality Disorder based on his history of "disregarding or violating the rights of others[,]" failing to conform to accepted social norms, acting impulsively and aggressively, lacking remorse, and irritability. Although Dr. Jackson opined that LeDoux's condition has "changed over time as he has learned in treatment and matured," she testified he still meets the criteria for commitment "with regard to different forms of aggression, continued impulsivity, continued irritability." LeDoux's continued dangerous behaviors are "demonstrated by over 200 major conduct violations while incarcerated." LeDoux had exhibited features of this disorder at Sand Ridge as well. While LeDoux has been more compliant with rules and expectations at Sand Ridge in the past few years, Dr. Jackson said "he's continued to voice statements at times about not wanting to follow the rules or disregarding the rules."

¶8 Dr. Jackson combined static and dynamic risk assessments to determine LeDoux's ten-year recidivism risk is 34.4 percent and his lifetime risk is 47.8 percent. Dr. Jackson's determination was also expressed as a range, stating with a 95-percent degree of confidence that LeDoux's likelihood of reoffending was between 36.7 percent and 59.2 percent. Dr. Jackson acknowledged, to a reasonable degree of psychological certainty, that LeDoux's lifetime risk to reoffend falls below the legal threshold of more likely than not.

¶9 Dr. Amelia Fystrom, a psychologist at Sand Ridge, evaluated LeDoux and prepared a treatment progress report in July 2022. According to Dr. Fystrom, in the last six months, LeDoux "started to be engaging in more and

more behavior that [she] find[s] concerning." For example, she said LeDoux's criminal thinking has increased to the point that "[h]e's made statements that he doesn't plan on following the rules whether he's discharged or on supervised release. With supervised release he believes that people are lying to him, that Kenosha County has no plans on releasing him. And so, he doesn't need to follow the rules if he's discharged."

¶10 Dr. Fystrom said LeDoux also commented that he has "addressed everything he needs to address in treatment. And since he's not being released on supervised release, he does not need to manage his risk factors." Dr. Fystrom noted this belief is flawed, explaining LeDoux has been in phase two of a three-phase treatment program since at least 2017. In that time, LeDoux had not completed some main assignments of phase two, including a "life history" and multiple "offense disclosure assignments," describing his offenses against children and adults and his non-contact sexual offenses. The doctor did note, however, that LeDoux has made some treatment progress. Among his achievements was managing the stress associated with the deaths of his mother and father in succession, while being denied requests to attend his mother's funeral and visit his father on his deathbed.

¶11 At trial, LeDoux called Dr. David Thornton, a psychologist, who was the treatment director at Sand Ridge from 2001 to 2013 and has been in private practice since 2016. Dr. Thornton evaluated LeDoux and prepared a report in October 2022. Dr. Thornton concluded that LeDoux no longer meets the criteria for commitment. He estimated that LeDoux's current risk to recidivate is approximately "40 percent or just above that," but stated that had LeDoux not demonstrated antisocial traits in the past six months, his risk would have been approximately 30 percent.

¶12    The circuit court denied LeDoux's discharge petition in an oral ruling, followed by a written order entered on August 14, 2023. The court concluded that the evidence showed that LeDoux remains a sexually violent individual. The court determined that LeDoux was still more likely than not to commit a new act of sexual violence in his lifetime. The court did indicate that the State "has barely met its burden," but the court had heightened concern about LeDoux's inappropriate behavior and statements in the six months since the doctors' evaluations. "[T]here's been a decline in the quality of Mr. LeDoux's behavior," the court found, "which had been improving[.]"

¶13    The circuit court noted that LeDoux's own expert, Dr. Thornton, had recognized that LeDoux's regression in the past six months had substantially increased his risk of committing a new sexually violent offense to about 40 percent. The court further acknowledged that Dr. Jackson's evaluation prepared six months before the trial put LeDoux's risk of reoffending at 47.8 percent, meaning both experts offered opinions that LeDoux's risk was statistically below the legal threshold for commitment under the law. "But the law does not require me to embrace the opinion of these witnesses," the court explained. Expounding further, the court indicated that it does not rely heavily on the results of assessment instruments, citing Dr. Jackson's testimony about the methodological idiosyncrasies that result from the practice of not counting some offenses based on plea bargaining and considering whether offenses are sentenced on separate days or the same day.

¶14    Testimony presented at trial also supported the circuit court's determination that LeDoux remains a sexually violent person under the statute. The court cited to the undisputed evidence that LeDoux's antisocial behavior and criminal thinking had increased in the past six months. The court then quoted

Dr. Fystrom's testimony about LeDoux's mindset and statements in recent months, which was "the bottom line" for the court. Finally, regarding LeDoux's frequent statements that he need not follow the rules of supervision or of discharge, if granted, the court stated as follows: "I understand why someone might come to that conclusion. Unfortunately, he shouldn't have." "And it scares me enough that … in spite of the testimony by the doctors, I think his risk is greater than the statutory threshold." This appeal follows.

## DISCUSSION

¶15 A person committed under WIS. STAT. ch. 980 may petition for discharge from a commitment at any time. WIS. STAT. § 980.09(1). At the discharge hearing, the State "has the burden of proving by clear and convincing evidence that the person meets the criteria for commitment as a sexually violent person." Sec. 980.09(3). A "[s]exually violent person" is "a person who has been convicted of a sexually violent offense" and "who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." WIS. STAT. § 980.01(7).

¶16 To establish an individual as a sexually violent person, the State must prove three elements: (1) the person has been convicted of a sexually violent offense; (2) the person has a mental disorder that predisposes him to acts of sexual violence; and (3) the person is dangerous to others because his mental disorder makes it more likely than not that he will engage in a future act of sexual violence. WIS JI—CRIMINAL 2506 (2021); *State v. Stephenson*, 2020 WI 92, ¶7, 394 Wis. 2d 703, 951 N.W.2d 819. WISCONSIN STAT. § 980.09(2) obligates the court to deny the discharge petition unless there are facts from which the factfinder would likely conclude that the person no longer meets the criteria for commitment.

¶17     We apply the criminal standard of review to the circuit court's decision as to whether there is sufficient evidence to prove LeDoux was a sexually violent person. *See* ***State v. Kienitz***, 227 Wis. 2d 423, 434-35, 597 N.W.2d 712 (1999).  This sufficiency standard also applies to the review of a discharge trial under WIS. STAT. § 980.09(3).  *See* ***Stephenson***, 394 Wis. 2d 703, ¶34.  The question of whether the evidence is sufficient to sustain a decision is a legal question that we review de novo.  *See* ***State v. Brantner***, 2020 WI 21, ¶7, 390 Wis. 2d 494, 939 N.W.2d 546.

¶18     In a ch. 980 case, we will affirm a circuit court's denial of a discharge petition unless we conclude as a matter of law that the evidence, when viewed most favorably to the commitment, is so lacking in probative value that no factfinder, acting reasonably, could have found by clear and convincing evidence that the defendant still met the criteria for commitment as a sexually violent person. ***Kienitz***, 227 Wis. 2d at 434-35.  The factfinder determines "credibility, weighs the evidence[,] and resolves conflicts in testimony." ***Id.*** at 435.  Because the factfinder is better able to assess witness credibility and evaluate the evidence, we defer to the circuit court's credibility determinations and evaluation of the evidence in ch. 980 proceedings.  ***State v. Rachel,*** 2010 WI App 60, ¶¶20, 30, 324 Wis. 2d 465, 782 N.W.2d 443.

¶19     On appeal, LeDoux concedes that the State proved both that he has been convicted of a sexually violent offense and that he has a mental disorder that predisposes him to acts of sexual violence.  *See* ***Stephenson***, 394 Wis. 2d 703, ¶7. He argues only that the State failed to prove the third element—that he is more likely than not to commit another sexually violent offense if discharged from his civil commitment.  *See* ***id.***  LeDoux states that "[t]he psychologists who assessed [his] risk found that he was less than 50 percent likely to recidivate" and the

"treatment record established that his primary risk factors[,]" Antisocial Personality Disorder and Paraphilia, "are in remission" or otherwise being controlled. Accordingly, he claims that the circuit court erred in concluding otherwise, because "there was no objective evidence that he qualified for commitment." We disagree.

¶20 LeDoux's argument seems to misconstrue the standards employed by a circuit court at a discharge hearing. Wisconsin law provides that a factfinder may determine that a committee is more likely than not to commit a new act of sexual violence without the benefit of expert testimony. *Stephenson*, 394 Wis. 2d 703, ¶21. "Courts recognize factfinders to be quite adept at understanding how an individual's criminal history, admissions of wrongdoing (or lack thereof), performance on supervision, or progress in treatment inform his likelihood of committing future acts of violence." *Id.* A factfinder may accept or reject in whole or in part any expert testimony relating to the likelihood of future dangerousness. *See Kienitz*, 227 Wis. 2d at 441.

¶21 In this case, the circuit court was the factfinder. The court held a two-day trial and, considering all evidence in the record, concluded that LeDoux is still a sexually violent person under Wisconsin law. The court gave several reasons in support of its conclusion and relied heavily on LeDoux's own statements about not "following the rules" if discharged. Because LeDoux would be subject to multiple "rules" if discharged from commitment, it was reasonable for the court to conclude from LeDoux's own statements that he would not engage in the work necessary to manage his risk factors to prevent future sexual offenses. The court's reliance on this evidence in concluding that LeDoux was still more likely than not to commit a new act of sexual violence was not unreasonable.

¶22    We reject LeDoux's contention that because no expert calculated a greater than 50 percent chance that he would reoffend, there was no objective evidence on which the circuit court could have determined he is still sexually violent.  As noted above, a court is not bound by the opinions of experts in reaching a discharge decision.  *See id.*

¶23    In issuing its oral decision, which LeDoux argues is contrary to the "objective evidence" of expert testimony, the circuit court opined that the discharge process is flawed with regard to the weight placed by some courts on expert testimony.  It noted that the current review process "sets up enormous risk to the public and elevates the opinions of psychiatrists and psychologists to a level that … they're cloaked with some special infallibility."  Regarding the practice of relying on experts to predict whether a person will reoffend, the court cited to "incidents of [the court's] own experience which certainly further cemented [its] views as to the unreliability of these projections that are being made."  For these reasons, as we observed above, the court determined that "in spite of the testimony by the doctors, [it] think[s] his risk is greater than the statutory threshold."  Because the court was entitled to reject expert testimony and embrace other credible evidence in reaching its discharge decision, we conclude that the evidence was sufficient to support its decision that LeDoux is still a sexually violent person.  *See id.* (holding that a factfinder may accept or reject any expert testimony relating to the likelihood of future dangerousness).

## CONCLUSION

¶24    Viewing the evidence in the light most favorable to the State and the commitment, we cannot conclude the evidence in this case was so insufficient that no reasonable factfinder could have determined that LeDoux was more likely than

not to commit a future act of sexual violence. We therefore affirm the order denying LeDoux's petition for discharge.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.